Jeanine Mason CAMPENNI and Frank J. Campenni,
Plaintiffs-Appellants- Cross Respondents,†

v.

John E. WALRATH, Jane E. Walrath and Fire Insurance
Exchange, Defendants-Respondents-Cross Appellants,

WISCONSIN PHYSICIANS SERVICE, Defendant.

Court of Appeals

*No. 92–0064. Submitted on briefs October 23, 1992.—Decided
November 25, 1992.*

(Also reported in 493 N.W.2d 266.)

†Petition to review granted.

563

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Eugene R. Pigatti* of *Pikofsky, Campenni & Pigatti, S.C.*, of Milwaukee.

On behalf of the defendants-respondents-cross appellants, the cause was submitted on the briefs of *John J. O'Neill* of *O'Neill, Schimmel, Quirk & Carroll, S.C.*, of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J.   Jeanine Mason Campenni and Frank J. Campenni appeal from a judgment awarding them $68,600 for injuries sustained by Jeanine as she attempted to protect her dogs from the Walraths' Irish Wolfhound. The Campennis claim that they should have been awarded double damages under sec. 174.02(1)(b), Stats. The issue before us is whether a dog is "property" as that word is used in sec. 174.02(1)(b). We hold that a dog does not constitute property under sec. 174.02(1)(b), and therefore affirm the judgment of the trial court. We do not address the other issues raised on appeal because this issue is dispositive. However, we do address the Walraths' cross-appeal.

In 1987, Jeanine was walking her dog on a leash when she encountered Jane Walrath walking her Irish Wolfhound, Jenni. Jenni was not on a leash and proceeded to attack Jeanine's dog. Jeanine took her dog to

the veterinarian, where it was treated for a superficial bite wound.

In 1988, Jeanine was again walking her dogs and encountered John Walrath walking Jenni. Jenni was again unleashed. Jenni ran toward Jeanine and her dogs and circled them, threatening attack. Jeanine remained with her dogs and severely injured her knee as she attempted to repel Jenni. After a two-day trial in 1991, the jury awarded $68,600 to the Campennis. The court set past medical and hospital expenses at $6528 by stipulation of the parties.

After the verdict, the Campennis moved for double damages pursuant to sec. 174.02(1)(b), Stats. The trial court failed to act upon the motion within ninety days, and it was deemed denied. *See* sec. 805.16, Stats. The Campennis now appeal.

Section 174.02(1)(b), Stats., states in part:

> [T]he owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property if the owner was notified or knew that the dog previously injured or caused injury to a person, livestock or property.

Livestock means "any horse, bovine, sheep, goat, pig, domestic rabbit or domestic fowl, including game fowl raised in captivity." Section 174.001(3), Stats.

Because a dog does not fit within the definition of livestock, we must decide whether a dog is property such that injury to the dog entitles its owner to double damages under the statute. This issue involves the interpretation of a statute, which is a question of law that we review *de novo* without deference to the trial court. *In re*

*K.N.K.*, 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987).

Our purpose is to determine the legislative intent of the statute. *In re J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). If the statute's language is ambiguous then we may construe the statute by looking to its history, context, subject matter and scope. *Id.* at 962-63, 471 N.W.2d at 502. A statute is ambiguous if it "is capable of being understood by reasonably well-informed persons in two or more different senses." *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 472, 464 N.W.2d 654, 657-58 (1991).

We conclude that the word "property" is ambiguous as it appears in sec. 174.02(1)(b), Stats. The parties offer two reasonable interpretations of "property." The Campennis assert that dogs are included within the realm of property as that word is normally used. Their interpretation is supported by case law. *See Skog v. King*, 214 Wis. 591, 593, 254 N.W. 354, 355 (1934).

In contrast, the Walraths assert that although dogs are usually considered property, the legislature did not intend them to be included within the sec. 174.02(1)(b), Stats., usage of the word "property." The Walraths observe that "livestock" are specifically given protection under the statute. They assert that this specific enumeration clearly shows legislative intent to exclude all other animals from the protection of this statute. Both arguments are reasonable, so we look to legislative history for guidance.

In its original form, the double damages section of the statute read:

> If any dog shall worry, wound, or kill any sheep or lamb, and the person owning or harboring such dog shall not keep such dog confined after being notified of such worrying, wounding, or killing, such owner or keeper shall be liable to pay damage in double the value of any sheep which may be thereafter killed by such dog . . ..

Section 3, ch. 383, Laws of 1852. The purpose of this section was to encourage the raising of sheep and to discourage the raising of dogs. *Nelson v. Nugent,* 106 Wis. 477, 479, 82 N.W. 287, 288 (1900); *see also Nelson v. Hansen,* 10 Wis. 2d 107, 113, 102 N.W.2d 251, 255 (1960).

The statute was changed in 1889 to impose liability on any owner whose dog "injured or caused the injury of any person or property, or killed, wounded or worried any horses, cattle, sheep or lambs." Section 1620, Stats. (1889). An owner was liable for double damages if he failed to keep his dog confined after receiving notice that the dog had "worr[ied], wound[ed] or kill[ed] any horses, cattle, sheep, or lambs and the dog subsequently wounded or killed any horses, cattle, sheep or lambs." Section 1621, Stats. (1889). Previous injury to a person triggered treble damages if the dog owner received notice. Section 1622, Stats. (1889). Previous damage to property did not enhance damages.

Based on the historical development of the owner liability statute, we conclude that the legislature intended to create two classes of property: animate and inanimate. We interpret the word "property" to mean inanimate property. The categories of animate property, or animals, included in the statute are then listed separately and specifically. Applying our interpretation to the present sec. 174.02(1)(b), Stats., it becomes evident

that dogs should not be included in the definition of the word "property."

Our conclusion is bolstered by two often used canons of statutory construction. First, we must construe a statute so as to give effect to all of its words and phrases, and no word or clause should be rendered surplusage. *Donaldson v. State,* 93 Wis. 2d 306, 315-16, 286 N.W.2d 817, 821 (1980). Second, the enumeration of specific alternatives in a statute is evidence of legislative intent that any alternative not specifically enumerated is to be excluded. *In re C.A.K.,* 154 Wis. 2d 612, 621, 453 N.W.2d 897, 901 (1990). We note that "[t]he fundamental axiom of judicial construction is that it avoid any result that would be absurd or unreasonable under the facts and circumstances of the case." *J.A.L.,* 162 Wis. 2d at 963, 471 N.W.2d at 502.

We must construe the word "property" so as to give meaning to all of the words in sec. 174.02(1)(b), Stats. If property were to include animate property, then it would include livestock. The use of the word "livestock" in the double damages section would be rendered surplusage. On the other hand, a construction that limits "property" to inanimate property gives full effect to the word "livestock."

In addition, sec. 174.02(1)(b), Stats., specifically lists those classes of animate property whose injury will expose a dog owner to liability for double damages. Double damages are triggered by injury to livestock, but not to domestic animals. Livestock and domestic animals are both subsets of animate property. In turn, dogs and cats are subsets of domestic animals. The legislature chose to include livestock but to exclude domestic animals, even though a definition of domestic animal is

569

contained in the same chapter. *See* sec. 174.001(2g), Stats. This is evidence that the legislature intended to exclude dogs when it decided which injuries would trigger double damage liability. *See C.A.K.,* 154 Wis. 2d at 621, 453 N.W.2d at 901. For these reasons, we hold that the Campennis are not entitled to double damages under sec. 174.02(1)(b).

The Walraths cross-appeal, claiming that the jury's $17,000 award for future medical and hospital expenses should be reduced to $15,000. We must sustain a jury's award of damages if there is any credible evidence to support it. *Carl v. Spickler Enters.,* 165 Wis. 2d 611, 625, 478 N.W.2d 48, 54 (Ct. App. 1991). The record contains expert testimony that future medical expenses could be at least $15,000. Nowhere did any expert set a limit on future medical expenses. We conclude that credible evidence supports the jury's award. We therefore affirm the trial court's judgment.

*By the Court.*—Judgment affirmed.