Jeanine Mason CAMPENNI and Frank J. Campenni,
Plaintiffs-Appellants-Cross Respondents-Petitioners,

v.

John E. WALRATH, Jane E. Walrath and Fire Insurance
Exchange, Defendants-Respondents-Cross
Appellants,†

WISCONSIN PHYSICIANS SERVICE, Defendant.

Supreme Court

*No. 92–0064. Oral argument November 2, 1993.—Decided
January 14, 1994.*

(Also reported in 509 N.W.2d 725.)

†Reconsideration denied April 5, 1994. Opinion supplied.

549

550

551

For the plaintiffs-appellants-cross respondents-petitioners there were briefs by *Eugene R. Pigatti* and *Pikofsky, Campenni & Pigatti, S.C.,* Milwaukee and oral argument by *Eugene R. Pigatti.*

For the defendants-respondents-cross appelants there was a brief by *John J. O'Neill* and *Eric J. Goelz* and *O'Neill, Schimmel, Quirk & Carroll, S.C.,* Milwaukee and oral argument by *John J. O'Neill.*

STEINMETZ, J.   This case presents two issues for review:

(1)   Does the term "property", as it appears in sec. 174.02, Stats.,[1] encompass dogs?

(2)   Did the defendants have notice or knowledge of the first injury caused by their dog at the time of the second injury?

On two separate occasions, Jenni, an Irish Wolfhound owned by John E. Walrath (Mr. Walrath) and Jane E. Walrath (Mrs. Walrath), attacked Jeanine Mason Campenni (Mrs. Campenni) and her two dogs, Santo and Max. During the first episode, when Mrs. Walrath was walking Jenni, Jenni bit Santo. The second time, when Mr. Walrath was walking Jenni, Mrs.

---

[1] Section 174.02, Stats., provides in relevant part:

**174.02   Owner's liability for damage caused by dog; penalties; court order to kill a dog.** (1)   Liability for injury. (a) *Without notice.* Subject to s. 895.045, the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property.

(b)   *After notice.* Subject to s. 895.045, the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property if the owner was notified or knew that the dog previously injured or caused injury to a person, livestock or property.

Campenni injured her knee while attempting to protect her dogs from Jenni.

Following a two-day trial, a jury awarded Mrs. Campenni and her husband, Frank J. Campenni (Mr. Campenni), $18 for the first incident and over $75,000 for the second incident. The Campennis moved for double damages pursuant to sec. 174.02(1)(b), Stats. The Waukesha county circuit court, the Honorable Harry G. Snyder, denied the motion by operation of law when he failed to act on it within 90 days of rendering the verdict. *See* sec. 805.16.[2] The court of appeals affirmed the trial court. *Campenni v. Walrath,* 172 Wis. 2d 563, 493 N.W.2d 266 (Ct. App. 1992). We now reverse the decision of the court of appeals.

On June 19, 1987, Mrs. Campenni was walking her two dogs on a leash in her rural Pewaukee neighborhood. As Mrs. Campenni emerged from a wooded area, she encountered Mrs. Walrath and her dog,

_____

[2] Section 805.16, Stats., provides as follows:

**805.16 Time for motions after verdict. (1)** Motions after verdict shall be filed and served within 20 days after the verdict is rendered, unless the court, within 20 days after the verdict is rendered, sets a longer time by an order specifying the dates for filing motions, briefs or other documents.

**(2)** The time for hearing arguments on motions after verdict shall be not less than 10 nor more than 60 days after the verdict is rendered, unless enlarged pursuant to motion under s. 801.15(2)(a).

**(3)** If within 90 days after the verdict is rendered the court does not decide a motion after verdict on the record or the judge, or the clerk at the judge's written direction, does not sign an order deciding the motion, the motion is considered denied and judgment shall be entered on the verdict.

**(4)** Notwithstanding sub. (1), a motion for a new trial based on newly discovered evidence may be made at any time within one year after verdict. Unless an order granting or denying the motion is entered within 90 days after the motion is made, it shall be deemed denied.

Jenni. Jenni was not on a leash. Jenni ran at Mrs. Campenni's dogs. Mrs. Campenni unleashed the larger of her dogs, Santo, hoping that it could avoid Jenni. However, Jenni caught up to Santo and the two dogs fought with each other until Mrs. Walrath got her dog under control. Mrs. Walrath noticed a bite mark on Santo's back and pointed it out to Mrs. Campenni.

A veterinarian treated Santo that same day. The bill for the entire treatment was $18.

On April 3, 1988, Mrs. Campenni was again walking her two dogs on leashes in her neighborhood when she saw the Walrath's dog, Jenni. Mr. Walrath was walking Jenni this time. Jenni, who was not on a leash, charged after Mrs. Campenni's dogs. Mrs. Campenni attempted to ward off the attack by activating an ultrasound dazer device. This attempt failed. Jenni proceeded to circle Mrs. Campenni and the two dogs. Mrs. Campenni tried to protect Santo and Max by staying between Jenni and her dogs. Before Mr. Walrath could get his dog under control, Mrs. Campenni injured her knee as she spun around trying to protect her dogs.

Mrs. Campenni received extensive treatment for damage to the ligaments in her knee, including arthroscopic surgery. Her doctor recommended further surgery which he estimated would cost $15,000.

The Campennis brought a suit against the Walraths in the Waukesha county circuit court. On July 11, 1991, the jury returned a verdict, finding the Walraths causally negligent in handling their dog on both occasions, and awarding damages of more than $75,000 to the Campennis.[3]

---

[3] The jury awarded Mr. Campenni $1,000 for loss of consortium. This award could also be doubled under sec. 174.02(1)(b), Stats. Hence, Mr. Campenni has an interest in this appeal.

During the trial, Mrs. Walrath admitted that she saw the bite mark on Santo's back immediately following the first incident. The Campennis submitted a special verdict question asking the jury if Mr. Walrath had notice of the injury to the Campenni's dog. They later withdrew the question, and the judge did not submit it to the jury. Based on the transcript of the jury instruction conference, it appears that the court and both parties agreed that if the jury found the Walraths causally negligent in both instances, then notice could be presumed.

The Campennis filed a motion for double damages on July 19, 1991. Pursuant to sec. 174.02(1)(b), Stats., the owner of a dog is liable for twice the amount of damages if the dog injures a person, property or livestock and the owner has notice or knowledge that the dog had previously injured a person, property or livestock. The circuit court denied the motion, pursuant to sec. 805.16(3), when it did not decide the motion within 90 days.[4]

The court of appeals affirmed the judgment of the trial court. *Campenni,* 172 Wis. 2d at 570. The court

---

[4] The circuit court issued a memorandum for the record dated November 22, 1991. In this memorandum, the court explained that if it had made an explicit decision with respect to the Campennis' motion for double damages, it would have denied the motion. The court stated that dogs are property, for purposes of sec. 174.02(1)(b), Stats. However, the court determined that the Walraths did not have sufficient notice of the first injury to be subjected to a doubling of the damages.

The circuit court lost its competency to rule on the motion for double damages after 90 days. *Watts v. Watts,* 152 Wis. 2d 370, 378, 448 N.W.2d 292 (Ct. App. 1989). Hence, this court will not consider this memorandum when reviewing the notice issue.

held that dogs are not property for purposes of sec. 174.02(1)(b), Stats. Because this decision disposed of the double damage issue, the court did not address notice in its opinion. This court accepted the Campenni's petition for review. We reverse the court of appeals' decision and hold that dogs are property for purposes of sec. 174.02 and that the Walraths knew of the first injury at the time of the second attack.

The Walraths are liable for double damages for the Campennis' injuries if: 1) the Walrath's dog, in the first attack, injured a person, livestock, or property; and 2) the Walraths knew or had notice of this injury at the time of the second attack. On the first occasion, on June 19, 1987, Jenni injured Santo, another dog. Santo is obviously not a person and the definition of "livestock" in sec. 174.001(3), Stats., does not include dogs.[5] Hence, we must determine if a dog is "property" for purposes of sec. 174.02.

The interpretation of a statute in relation to a given set of facts is a question of law which this court reviews *de novo. Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985). Our sole purpose is to determine the legislative intent of the statute. *In Interest of J.A.L.,* 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991). Both parties have offered reasonable interpretations of the word "property". The Campennis assert that "property," as it is normally used, includes dogs. According to the Walraths, the legislature, by explicitly listing certain animals using the term "livestock",

---

[5] Section 174.001(3), Stats., provides as follows:

**(3)** 'Livestock' means any horse, bovine, sheep, goat, pig, domestic rabbit or domestic fowl, including game fowl raised in captivity.

556

intended to limit the word "property" to inanimate property. Thus, we find that the language of the statute is ambiguous because it is capable of being construed in two different ways by reasonably well-informed persons. *See Tahtinen,* 122 Wis. 2d at 166–67. We may therefore look to the history, context, subject matter and scope of the statute when construing it. *See J.A.L.,* 162 Wis. 2d at 962–63.

Chapter 174, Stats., does not include a definition of the word "property". "Property" is defined, to some extent, in sec. 990.01(31) which states: " 'Property' includes real and personal property."

Given this lack of a meaningful statutory definition, we must look elsewhere to determine whether the definition of "property" in sec. 174.02, Stats., includes dogs. Before the legislature enacted sec. 174.02, this court had already determined that dogs are personal property. *Hagenau v. Millard,* 182 Wis. 544, 548, 195 N.W. 718 (1924). "[T]he legislature is presumed to enact statutory provisions with full knowledge of the existing laws. . . ." *Glinski v. Sheldon,* 88 Wis. 2d 509, 519–20, 276 N.W.2d 815 (1979). Furthermore, a court "will not construe a statute as changing the common law unless the statute 'clearly and beyond any reasonable doubt expresses such a purpose by language that is clear, unambiguous and peremptory.' " *In re Estate of Drab,* 143 Wis. 2d 568, 572, 422 N.W.2d 144 (Ct. App. 1988) (quoting *Grube v. Moths,* 56 Wis. 2d 424, 437, 202 N.W.2d 261 (1972)). Hence, unless the history or context of sec. 174.02 requires a different result, this court should find that the legislature intended to define "property" in sec. 174.02 as encompassing dogs, in accordance with the common law.

The Walraths argue, and the court of appeals agreed, that construing the term "property" as including any domestic animals, such as dogs, would render the word "livestock" in sec. 174.02, Stats., surplusage. In other words, if "property" includes animate property, then it would necessarily include livestock and there would be no need for the term "livestock" to appear as an alternative to property in the statute. Because courts should interpret a statute so as to give effect to all of its words, a proper construction of sec. 174.02 would, according to the Walraths, exclude dogs from the definition of "property".

The history of sec. 174.02, Stats., provides a logical explanation for the appearance of both words—"livestock" and "property"—in the statute, without leading to the conclusion that dogs are not property. The legislature enacted the current version of the relevant language of sec. 174.02 in 1981. Prior to that, ch. 174 provided three different levels of damages for a subsequent injury caused by a dog when the owner had notice of a prior injury. If the owner had notice that the dog previously injured a person, the owner was liable for treble damages for injuries caused by subsequent attacks. Section 174.04 (1979–80). If the owner had notice that the dog previously injured livestock,[6] the owner was liable for double damages for injuries caused by subsequent attacks. Section 174.03 (1979–80). However, if the dog had previously injured only property, the owner was merely liable for the

---

[6] Prior to 1981, the relevant statutes did not use the word "livestock", but rather listed those animals included individually—horses, cattle, sheep or lambs. As part of the revision of sec. 174.02, Stats., in 1981, the legislature replaced this list of animals with the more inclusive term "livestock".

558

actual damages for injuries resulting from subsequent attacks. *See* sec. 174.02 (1979–80).

Thus, before 1981, the legislature separated livestock from other property, including other animals, because different damages were available for injuries to these different types of property. Until 1981, the legislature apparently believed that certain animals—horses, cattle, sheep and lambs—were more valuable than others in Wisconsin's agrarian society.

In the 1981 revision, the legislature removed these three classes. From that point on, if the owner knew or had notice that the dog had injured any of the three—a person, livestock or property—the owner would be liable for double damages for any future injury caused by the dog. If, in the 1981 revision, the legislature had not listed "livestock" separately from "property," as it had in the past with the list of animals, courts may have construed this omission to mean that the legislature no longer intended livestock to be covered by the statute. The legislature most likely included both terms, despite the overlap in coverage, to avoid confusion. Therefore, the decision of the legislature to include the term "livestock" in sec. 174.02, Stats., merely reflects a continuing recognition of the statute's historical past.

The court of appeals found significant the fact that the legislature chose to use the term "livestock" rather than the term "domestic animal" in sec. 174.02, Stats. Section 174.001(2g) states: "'Domestic animal' includes livestock, dogs and cats." According to the court of appeals, the legislature chose the more restrictive word because it intended to exclude dogs from coverage under sec. 174.02. However, the court of appeals failed to realize that the legislature did not include the word "domestic animal" in the statutes until 1983—two years after the legislature chose to use

the word "livestock" in sec. 174.02. *See* 1983 Wisconsin Act 451, sec. 8. The legislature did not have the term "domestic animal" at its disposal when it revised sec. 174.02 in 1981 and, hence, the court of appeals' rationale fails.

Finally, our analysis must follow the rule that this court should avoid absurd results when construing a statute. *J.A.L.,* 162 Wis. 2d at 963. It would indeed be absurd if the Walraths would be subjected to double damages if their dog bit the leash of the Campenni's dog, which is undeniably property, but would not be liable for twice the damages in this case because their dog actually bit the Campennis' dog. Any common sense definition of the word "property" should encompass dogs. Hence, we hold that, based on the history, context, subject matter and scope of the statute, dogs are "property" under sec. 174.02, Stats.

This determination does not end our review. The Walraths will not be liable for double damages unless they knew or had notice that their dog, Jenni, injured the Campennis' dog, Santo, during the first incident.[7] The jury already determined that Jenni injured the Campennis' property, Santo, when it awarded the Campennis $18 to compensate them for the cost of the visit to the veterinarian.

---

[7] The Walraths contend that the Campennis waived any claim to double damages when they withdrew the special verdict question regarding Mr. Walrath's knowledge of the first injury. However, as discussed above, the trial record indicates that the Campennis only withdrew the question because both parties and the court agreed that if the jury found the Walraths negligent in both incidents, the court could infer that the Walraths had the requisite notice or knowledge. Accordingly, we find that the Campennis did not waive this claim.

The predecessor of sec. 174.02, Stats., required that the owner of the dog have actual notice of the first injury before the owner would be liable for multiplied damages for subsequent injuries. *See* secs. 174.03, 174.04 (1979–80). The current version of the statute imposes double damages "if the [dog] owner was notified or *knew* that the dog previously injured . . . property." Section 174.02. (Emphasis added.) Mrs. Walrath testified at trial that she saw the injury on Santo's back. This testimony, by itself, satisfies the requirement that Jenni's owner "knew that the dog previously injured . . . property." In addition, Mr. and Mrs. Walrath acknowledged in their pleadings and testimony that they both owned Jenni. Mr. Walrath cannot claim that, while his wife knew of the first injury, he had no such knowledge.

We therefore reverse the court of appeals and hold that the Walraths are liable for double the full amount of damages that the jury awarded to the Campennis for the April 3, 1988, incident. Both conditions of sec. 174.02, Stats., are satisfied. The Campennis' dog is "property" under the statute and the Walraths knew of the first injury at the time the second injury occurred.

*By the Court.*—The decision of the court of appeals is reversed.

**PER CURIAM.** On Motion for Reconsideration. The court denies the motion for reconsideration filed on January 31, 1994, by John E. Walrath and Jane E. Walrath, defendants-respondents-cross appellants. We do, however, supplement the opinion in response to the Walraths' motion.

First the Walraths seek clarification of the statement at 180 Wis. 2d 548, 552, 509 N.W.2d 726, that the

jury had awarded the plaintiffs "over $75,000 for the second incident." They assert clarification is needed in order to determine the damages for which the Walraths are now liable under sec. 174.02(1)(b).

The parties agree that the Campennis are entitled to $68,600.00[1] in damages for the second incident and that this amount should be doubled under sec. 174.02(1)(b). The dispute centers on an additional $6,528.00, which constitutes Mrs. Campenni's past medical and hospital expenses. Wisconsin Physicians Service paid these expenses and had a subrogation claim that was settled by the Walraths before trial.[2]

We conclude that the total damages to be doubled is $68,600.00, for a total of $137,200. The Campennis are entitled to a judgment in double the amount of past medical expenses, but the calculation must be separated from the calculation of the other damages. Because the Walraths have already paid the Campennis once for their past medical expenses in the amount of $6,528 (by paying the subrogee), the Walraths should be liable to the Campennis for the sum of $6,528, in addition to the sum of $137,200. Using these calculations the Campennis will receive, as they are entitled under the statute, double payment for the past medical expenses. Doubling $6,528, as the Campennis request, would mean that the Walraths would be pay-

---

[1] The jury awarded Mrs. Campenni $67,600.00 for the second incident consisting of $17,000.00 for future medical and hospital expenses, $50,000.00 for past and future pain, suffering and disability and $600.00 for past household expenses as a result of the second incident. The jury awarded $1,000.00 for loss of consortium as a result of the second incident.

[2] The over $75,000 figure is arrived at by adding together $68,600.00 and $6,528.00, past medical expenses.

ing $6,528 three times. Triple damages are not required by the statute.

Second, the Walraths seek clarification of the calculation of interest under sec. 814.04(4). The Walraths assert that the Campennis are entitled to statutory interest on their $68,600.00 compensatory damage award from the July 11, 1991 verdict to the date of payment and to statutory interest on their $68,600 double damage award from January 14, 1994, the date of this court's decision, to the date of payment. Section 814.04(4), Stats., provides that "if the judgment is for the recovery of money, interest at the rate of 12% per year from the time of the verdict, decision or judgment is entered shall be computed by the clerk and added to the costs." The Walraths owed the amount the jury assessed as of the date of the verdict. Accordingly, we conclude that the interest shall be calculated on the total (doubled) damages from the date of the jury verdict. *See, e.g., Nelson v. Travelers Ins. Co.,* 102 Wis. 2d 159, 306 N.W.2d 71 (1981); *Zeidler v. Goelzer,* 191 Wis. 378, 211 N.W. 140 (1926); *McLimans v. Lancaster,* 65 Wis. 240 (1886).

*By the Court.*—The motion for reconsideration is denied.