HERITAGE FARMS, INC., Audrey Bunchkowski, Russell Bunchkowski, Ruth Dutcher, Howard Dutcher, Sally Freitag, Amy Holzwart, James Holzwart, Kathleen Khin, Glenwood Zellmer, Daryl Lloyd, Donald Lloyd, Judy Maas, Jeffrey Maas, Carolyn Mueller, Lois Rucich, George Rucich, Donna Semrow, Harland Semrow, Beverly Singer, Norman A. Singer Trust, Joan Singer, Gordon Singer, Singer Living Trust, Inga Stoellinger, Otto Stoellinger, Catherine Swanton, Swanton Family Trust, Christine Toliver, Alan Toliver, Krista Zimmer and Norman Zimmer, Plaintiffs-Appellants-Petitioners,

HARTFORD INSURANCE COMPANY OF the MIDWEST, Auto-Owners Insurance Company, Safeco Insurance Company of America and Acuity, a mutual insurance company, Involuntary-Plaintiffs,

v.

MARKEL INSURANCE COMPANY, J.J.J. Recreation Corporation d/b/a Lake of the Woods Campground, American Family Mutual Insurance Company and Jeffrey Knaack, Defendants-Respondents.

Ted SCHWOCHERT, Paul B. Schwochert, Helen Schwochert and Sue Schroeder, Plaintiffs-Appellants-Petitioners,

v.

47

MARKEL INSURANCE COMPANY, J.J.J. Recreation Corporation d/b/a Lake of the Woods Campground, American Family Mutual Insurance Company and Jeffrey Knaack, Defendants-Respondents.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Plaintiff,

v.

MARKEL INSURANCE COMPANY, J.J.J. Recreation Corporation d/b/a Lake of the Woods Campground, American Family Mutual Insurance Company and Jeffrey Knaack, Defendants.

Supreme Court

*No. 2007AP983. Oral argument December 9, 2008.
—Decided March 26, 2009.*

2009 WI 27

(Also reported in 762 N.W.2d 652.)

For the plaintiffs-appellants-petitioners there were briefs by *Mark L. Thomsen, Charles David Schmidt,* and *Cannon & Dunphy, S.C.,* Brookfield, and oral argument by *Charles David Schmidt.*

For the defendants-respondents there was a brief filed by *John V. McCoy, Brian D. Parish,* and *McCoy & Hofbauer, S.C.,* Waukesha, and oral argument by *John V. McCoy.*

An amicus curiae brief was filed by *Charlotte Gibson,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general, on behalf of the Wisconsin Department of Natural Resources.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published court of appeals' decision[1]

---

[1] *Heritage Farms, Inc. v. Markel Ins. Co.,* 2008 WI App 46, 309 Wis. 2d 217, 747 N.W.2d 762.

that affirmed the decision of the Waushara County Circuit Court, Thomas T. Flugaur, Judge. The circuit court concluded that Heritage Farms, Inc.[2] could not be awarded double damages and attorney fees pursuant to Wis. Stat. § 26.21(1) (2007–08)[3] because that statute applies only to railroad corporations and none of the defendants are a railroad corporation. The court of appeals affirmed, and as a result, Heritage Farms petitioned this court for review. We granted the petition for review and reverse the court of appeals.

¶ 2. This case presents two issues for review. First, does Wis. Stat. § 26.21(1) apply only to a certain class of tortfeasor? We conclude that Wis. Stat. § 26.21(1) is not limited to a specific class of tortfeasor such as a railroad corporation, and a violation under Wis. Stat. § 26.20 is not a prerequisite for the applicability of § 26.21(1). Second, does § 26.21(1) require a showing of "gross negligence"? We conclude that the term "negligence" in § 26.21(1) does not require a showing of "gross negligence."

## I. BACKGROUND

¶ 3. Between March 3 and March 8, 2003,[4] Jeffrey Knaack ignited a large debris pile, which consisted of leaves, pine needles, brush, stumps, and building materials. Knaack was responsible for maintaining this

---

[2] We will refer to the plaintiffs collectively as "Heritage Farms."

[3] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated. The full text of Wis. Stat. § 26.21(1) can be found in ¶ 10.

[4] A burning permit for Lake of the Woods was obtained for March 3 through March 8, 2003, but Knaack was unable to recall exactly what day he started the burn pile on fire.

burn pile at the Lake of the Woods Campground as a favor to Jack Scimeca who owned the property and operated the business. On April 14, 2003, the March burn pile fire escaped the Lake of the Woods Camp ground, and as a result, burned 572 acres of land.

¶ 4. Heritage Farms filed a civil action against the defendants[5] (hereinafter referred to as "Markel") claiming negligence, trespass, and nuisance. Heritage Farms sought double compensatory damages and attorney fees pursuant to Wis. Stat. § 26.21(1). Markel moved the court for partial summary judgment asserting that § 26.21(1) did not apply because none of the defendants were a railroad corporation and none had violated Wis. Stat. § 26.20. The circuit court granted that motion and concluded that § 26.21(1) applies only to railroad corporations. After a four week jury trial, a verdict was returned that awarded Heritage Farms $568,422 in damages.[6] Heritage Farms subsequently moved the circuit court to reconsider its previous ruling regarding the applicability of § 26.21(1). The circuit court denied Heritage Farms' motion to reconsider. Heritage Farms appealed that ruling and the court of appeals affirmed the circuit court. The court of appeals concluded that § 26.21(1) applied only to railroad corporations and did not decide the issue of whether "gross negligence" was required. Heritage Farms petitioned this court for review, which we accepted.

---

[5] The defendants include Knaack, Knaack's personal liability carrier, American Family Mutual Insurance Company, Lake of the Woods Campground, and its commercial liability insurer, Markel Insurance Company.

[6] The circuit court entered judgment on the verdict, and with costs and interest, the defendants were liable to Heritage Farms in the amount of $637,267.72.

## II. STANDARD OF REVIEW

¶ 5. The issues in this case are questions of statutory interpretation. Statutory interpretation is a question of law that we review de novo but benefiting from the lower courts' analyses. *C. Coakley Relocation Sys., Inc. v. City of Milwaukee,* 2008 WI 68, ¶ 14, 310 Wis. 2d 456, 750 N.W.2d 900.

## III. ANALYSIS

¶ 6. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. This court begins statutory interpretation with the language of the statute. *Id.,* ¶ 45. If the meaning of the statute is plain, we ordinarily stop the inquiry and give the language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*

¶ 7. Context and structure of a statute are important to the meaning of the statute. *Id.,* ¶ 46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* Moreover, the "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.*

"A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes—that is, from its context or the structure of the statute as a coherent whole." *Id.*, ¶ 49.

¶ 8. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.*, ¶ 46 (citation omitted). If statutory language is unambiguous, we do not need to consult extrinsic sources of interpretation. *Id.*

¶ 9. The two issues presented in this case require us to interpret Wis. Stat. § 26.21(1) and related statutes. We address both issues in detail below.

¶ 10. Wisconsin Stat. § 26.21, "Civil liability for forest fires," provides:

> (1) In addition to the penalties provided in s. 26.20, the United States, the state, the county or private owners, whose property is injured or destroyed by forest fires, may recover, in a civil action, double the amount of damages suffered, if the fires occurred through willfulness, malice or negligence. In a civil action, a court may award reasonable costs for legal representation to provide owners recovering damages under this subsection.

> (2) Persons causing fires in violation of this chapter shall be liable to the state in an action for debt, to the full amount of all damages done to the state lands and for all expenses incurred by the towns fighting forest fires and shall be liable to municipalities in an action for debt, to the full amount of all damages to the municipal lands and for all expenses incurred by the municipalities fighting such fires.

¶ 11. Wisconsin Stat. § 26.20, "Fire protection devices," includes a number of subsections pertaining to actions that must be taken by those corporations that operate on or maintain a railway.[7] Subsection (9) of Wis. Stat. § 26.20, "Penalty," provides:

> (a) Any corporation, by its officers, agents, or employees, violating this section, shall forfeit not more than $500.

> (b) Any corporation, by its officers, agents or employees, willfully violating this section shall be fined not more than $1,000.

> (c) Any conductor, individual in charge of a train or officer, agent or employee of a railway who violates this section shall forfeit not more than $500.

A. Applicability of Wis. Stat. § 26.21(1) to Markel

¶ 12. Markel argues that Wis. Stat. § 26.21(1) does not apply to all tortfeasors, but rather, it argues that the statute applies only to those tortfeasors who violate Wis. Stat. § 26.20, i.e., railroad corporations. Since no railroad corporation is involved in this case, Markel argues that it cannot be penalized under § 26.21(1). Markel reasons that § 26.21(1) is limited by § 26.20 because § 26.21(1) states "[i]n addition to the penalties provided in s. 26.20." Markel also asserts that

---

[7] While nothing specifically limits Wis. Stat. § 26.20 to only railroad corporations, most of the statutory provisions in § 26.20 involve only those who operate on or maintain a railway. However, Wis. Stat. § 26.20(3) does apply to donkey, traction, and portable engines, which indicates a broader construction than just railroads except that any "appeal" regarding subsection (3) is to be decided by the commissioner of railroads. Subsection (8) also seems to contemplate an application that is not limited to railroad corporations, but locomotives are referenced in this subsection as well.

other portions of chapter 26, Wisconsin case law, and the statute's legislative history all support the interpretation that § 26.21(1) applies only to railroad corporations. Heritage Farms, on the other hand, argues that § 26.21(1) applies to all tortfeasors. Heritage Farms reasons that nothing in the statutory provision specifically limits the statute's scope to a specific class of tortfeasor such as railroad corporations, and to apply § 26.21(1) in such a manner would lead to absurd results. Heritage Farms supports its interpretation by relying on the legislative history, historical context, and the Wisconsin Department of Natural Resources' (DNR) conclusion that § 26.21(1) is not limited to a specific class of tortfeasor.

¶ 13. We agree with Heritage Farms, and as a result, we reverse the court of appeals' decision. We conclude that Wis. Stat. § 26.21(1) is not limited to a specific class of tortfeasor such as a railroad corporation, and a violation under Wis. Stat. § 26.20 is not a prerequisite for applying § 26.21(1). The following four reasons support our conclusion.

¶ 14. First, the text of Wis. Stat. § 26.21(1) does not limit that statute's application to railroad corporations. To interpret the statute consistent with Markel's argument would require us to insert words into the statute. Markel argues as though the phrase "railroad corporation" was inserted as follows: "In addition to the penalties provided in s. 26.20, the United States, the state, the county or private owners, whose property is injured or destroyed by forest fires [*caused by a railroad corporation*], may recover, in a civil action . . . ."[8] Be-

---

[8] We use "railroad corporation" rather than "violator of § 26.20" because the defendants in this case argue that

cause the legislature did not so limit the application of § 26.21(1) to railroad corporations, we will not insert those words into the statute to create such a result.[9]

¶ 15. Second, the statutory history[10] of Wis. Stat. § 26.21(1) supports the interpretation that the current version of § 26.21(1) is not limited to railroad corpora-

§ 26.21(1) applies only to railroad corporations. In this case we need not reach the determination of whether Wis. Stat. § 26.20 applies only to railroads.

[9] *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 39, 271 Wis. 2d 633, 681 N.W.2d 110 (citing to the United States Supreme Court, *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992), asserting that "[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* (7th ed. 2007) (§ 46:3, " 'Expressed' intent," stating "[w]hat a legislature says in the text of a statute is considered the best evidence of the legislative intent or will"; § 46:6, "Each word given effect," stating "it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose"; § 47:23, "Expressio unius est exclusio alterius," stating "where a form of conduct, . . . there is an inference that all omissions should be understood as exclusions"; § 47:38, "Insertion of words," stating "[i]n construing a statute, it is always safer not to add to or subtract from the language of a statute unless imperatively required to make it a rational statute") (internal punctuation and footnotes omitted).

[10] By statutory history, we are referring to the previously enacted versions of the statute, which have been subsequently amended by the legislature. Wisconsin Stat. § 26.21(1) was originally enacted in 1905; *see* § 18, ch. 264, Laws of 1905. It was referenced as Wis. Stat. § 1494–58; *see* Wis. Stat. ch. 61, § 1494–58 (Supp. 1906). Revisions relevant to this appeal were made in 1927 and 1977. Wisconsin Stat. § 26.20 was enacted in 1905; *see* § 17, ch. 276, Laws of 1905. It was referenced as Wis. Stat. § 1494–57; *see* Wis. Stat. ch. 61, § 1494–57 (Supp. 1906).

tions and does not require a violation of Wis. Stat. § 26.20 in order to be applied. Before 1977, the two statutory sections were specifically linked together by the phrase "such fires." The 1905 version of § 26.21(1) allowed recovery of additional penalties for those fires —"such fires"—which were a violation of the 1905 version of § 26.20. The 1905 version of § 26.21(1), "Civil liability for forest fires" read as follows:

> In addition to the penalties provided in [section 1494–57], the United States, the state, the county or private owners, whose property is injured or destroyed by *such fires,* may recover . . . .

Wis. Stat. § 1494–58 (Supp. 1906) (emphasis added). Because the legislation at that time referred to "such fires," the legislature had limited the applicability of the 1905 version of § 26.21(1) to fires that qualified as a § 26.20[11] violation. Therefore, those two sections were linked together until 1977 when the "such fires" language was removed by the legislature and replaced with the broader term, "forest fires."[12] We must give deference to that legislative action. The 1977 revisions that removed the "such fires" language eliminated the quali-

---

[11] The 1905 version of Wis. Stat. § 26.20 was applicable to more than just railroad corporations. Section 1494–57 applied to "any logging locomotive, donkey or threshing engine, railway locomotive and all other engines, boilers, and locomotives." *See* Wis. Stat. ch. 61, § 1494–57 (Supp. 1906). Other subsections referred primarily to railroad corporations.

[12] *See* Wis. Stat. § 26.21(1) (1977–78). We also note that "forest fire," which is referenced in Wis. Stat. § 26.21(1), is defined broadly under Wis. Stat. § 26.01(2) (2001–02). " 'Forest fire' means uncontrolled, wild, or running fires occurring on forest, marsh, field, cutover, or other lands or involving farm, city, or village property and improvements incidental to the uncontrolled, wild, or running fires occurring on forest, marsh,

fication that the fires be a violation of § 26.20 and thus expanded the penalty provision to include those who cause a forest fire regardless of whether the fire was a violation of the preceding section. Wisconsin Stat. § 26.21(1) is no longer limited in its application to "such fires" that qualify as a § 26.20 violation, and as a result, a § 26.20 violation is no longer a prerequisite for applying § 26.21(1). Consequently, whether § 26.20 is limited to fires caused by railroad corporations is irrelevant to our determination since that statute stands alone and § 26.21(1) has a broader application to those who cause a forest fire.

¶ 16. Third, if the legislature meant to limit Wis. Stat. § 26.21(1)'s application to only violators of Wis. Stat. § 26.20, then § 26.21(1) would have been more appropriately inserted in § 26.20. Section 26.20 has its own penalty section. *See* Wis. Stat. § 26.20(9). If, as Markel argues, § 26.20 is limited to railroad corporations and must be violated in order for § 26.21(1) to apply, then the legislature likely would have placed § 26.21(1) in the penalty subsection of § 26.20 instead of creating a stand alone provision. We give deference to the legislature's action.

¶ 17. Fourth, although not determinative, we find it significant that the DNR has concluded Wis. Stat. § 26.21(1) applies to all tortfeasors and not just railroads. For example, the burning permit, which was issued by the DNR in this case, contains the following warning: "If your fire escapes and becomes a forest fire you can be charged for all costs of extinguishing the fire and, in civil action, may be charged for twice the value of any property damaged or destroyed." The DNR has

field, cutover, or other lands." *See* Wis. Stat. § 26.01(2). This broad definition is inconsistent with Markel's narrow construction of § 26.21(1).

had the opportunity to consider Wisconsin's forestry provisions and understands the history of forest fires and timber in this state. As a result, we find it significant that the DNR has determined that the statute applies to all tortfeasors rather than just railroad corporations.

¶ 18. Markel, however, makes several arguments in support of limiting Wis. Stat. § 26.21(1) to only those who violate Wis. Stat. § 26.20—primarily railroad corporations. Markel asserts that the phrase in § 26.21(1), "[i]n addition to the penalties in s. 26.20," means that § 26.21(1) is limited to railroad corporations who have violated § 26.20. Markel argues that to receive double damages under § 26.21(1), one must have violated § 26.20. Thus, a violation of § 26.20 is a prerequisite to receiving the benefits of § 26.21(1). Markel relies primarily on *The American Heritage Dictionary of the English Language* (4th ed. 2000) to define the word "addition." "Addition," Markel asserts, means "the act or process of adding, especially the process of computing with sets of numbers so as to find their sum" or "something added, such as a room or section appended to a building." Markel thus argues that the penalties of § 26.21(1) must be added to those in § 26.20.

¶ 19. While we have often utilized the dictionary to assist us in statutory interpretation,[13] Markel fails to define the correct term. Markel defines the word "addition," but the phrase in question is "in addition to."[14]

---

[13] *State v. Sample,* 215 Wis. 2d 487, 499–500, 573 N.W.2d 187 (1998) (concluding that a dictionary may be utilized to guide the meaning of common and ordinary words); *See Kalal,* 271 Wis. 2d 633, ¶ 54 (utilizing a dictionary definition).

[14] *See Kalal,* 271 Wis. 2d 633, ¶ 49 (stating that "[m]any words have multiple dictionary definitions; the applicable definition depends upon the context in which the word is used").

This phrase means "[o]ver and above; besides." *The American Heritage Dictionary of the English Language* 20 (3d ed. 1992). Thus, the phrase "in addition to" does not mean that Wis. Stat. § 26.21(1) applies only when it is being added to penalties under Wis. Stat. § 26.20. Rather, the phrase "in addition to" means besides the penalties provided in § 26.20, the penalties of § 26.21(1) may also be applicable.[15]

¶ 20. The phrase "in addition to," however, does serve a useful purpose. As a principle of statutory interpretation, a specific statute generally prevails over a general statute. *State v. Anthony D.B.*, 2000 WI 94, ¶ 11, 237 Wis. 2d 1, 614 N.W.2d 435. If the language "in addition to" did not appear in Wis. Stat. § 26.21, a violator of Wis. Stat. § 26.20 could assert that the only damages or penalties applicable to it would be those in the specific statute of § 26.20.[16] It seems counter-intuitive that the legislature would have intended to limit the liability of one who causes a forest fire as a result of violating § 26.20, to the forfeitures listed in the specific statute of § 26.20. However, because of the phrase "in addition to," a violator of § 26.20 that causes

[15] The dissent states that "a plaintiff employing § 26.21(1) could never obtain damages that are '[i]n addition to the penalties provided in s. 26.20' if the conduct that caused the fire did not violate § 26.20, thereby permitting the State to assess a penalty under § 26.20." *See* dissent, ¶ 56. According to the dissent's logic, the "in addition to the penalty" language really reads "when there is a violation of § 26.20." That is not a plain language reading of the statute.

[16] While this argument was not made by the defendants in this case, it is still relevant to address. A similar argument was made successfully in *Missouri, K. & T. Ry. Co. v. Jackson,* 174 F.2d 297, 301–02 (10th Cir. 1949).

a forest fire may also be subjected to double damages and attorney fees pursuant to § 26.21(1) and is not limited to only those penalties in § 26.20.

¶ 21. Markel also argues that Wis. Stat. § 26.21(1) is limited to railroad corporations because Wis. Stat. § 26.14 is not mentioned in § 26.21(1), and § 26.14 addresses all civil liability rather than just civil liability of railroads.[17] Markel's reliance on § 26.14 is unpersuasive because the 1905 version of § 26.21(1) was created over 20 years before § 26.14 was created in 1927, and as a result, it is not surprising that § 26.14 is not referenced in § 26.21(1). Furthermore, if § 26.21(1) was limited to violations of § 26.20, one who is liable for damages under § 26.14 could then escape the penalties of § 26.21(1). However, the legislature chose the phrase "forest fires," in both statutes instead of limiting either statute. There is simply no indication that the legislature intended as Markel suggests.

¶ 22. Markel relies on *Kimberly-Clark Corp. v. Public Service Commission of Wisconsin* to assert that " 'where a statute with respect to one subject contains a given provision, the omission of such provision *from a*

---

[17] Wisconsin Stat. § 26.14, "Forest fires, authority of fire fighters, compensation, penalties, civil liability" provides in part:

(9)(a) Nothing in this chapter shall be construed as affecting the right to damages. The liability of persons for damages is not limited to the destruction of merchantable timber but may also include the value of young or immature forest growth.

(b) Any person who sets a fire on any land and allows such fire to escape and become a forest fire shall be liable for all expenses incurred in the suppression of the fire by the state or town in which the fire occurred. An action under this paragraph shall be commenced within the time provided by s. 893.91 or be barred.

*similar statute* concerning a related subject is significant in showing that a different intention existed.' " *Kimberly-Clark,* 110 Wis. 2d 455, 463, 329 N.W.2d 143 (1983) (citing *State v. Welkos,* 14 Wis. 2d 186, 192, 109 N.W.2d 889 (1961) (emphasis added)). Because, Markel argues, subsection (2) of Wis. Stat. § 26.21 "clearly encompasses all violations of chapter 26," and subsection (1) does not contain such broad language, the two provisions have a different scope. Thus, according to Markel, subsection (1), unlike subsection (2), applies only to railroad corporations. Wisconsin Stat. § 26.21(2) provides:

> Persons causing fires in violation of this chapter shall be liable to the state in an action for debt, to the full amount of all damages done to the state lands and for all expenses incurred by the towns fighting forest fires and shall be liable to municipalities in an action for debt, to the full amount of all damages to the municipal lands and for all expenses incurred by the municipalities fighting such fires.

¶ 23. While the principle relied upon by Markel is an important tool of statutory interpretation, it is not helpful in this case because of the differences between the two subsections of Wis. Stat. § 26.21. Subsection (1) is drafted from the perspective of who may bring an action, and subsection (2) is drafted from the perspective of who is the tortfeasor. This plain reading of the subsections leads us to question the purported "similarity" of the provisions, and thus, the application of this principle of statutory interpretation is not appropriate in this case. Moreover, it seems peculiar that two subsections of the same section would implicitly vary so greatly in scope but not do so more explicitly. Therefore, we do not find Markel's reliance on this principle persuasive in the case at hand.

65

¶ 24. Finally, Markel argues that the three cases "to have ever cited Wis. Stat. § 26.21(1)," or any predecessor to that statute, were all lawsuits involving railroad corporations, and thus, this is further proof that § 26.21(1) applies only to railroad corporations. Markel relies on *Bonnell v. Chicago, St. Paul, Minneapolis & Omaha Railway Co.*, 158 Wis. 153, 147 N.W. 1046 (1914), *Allenton Volunteer Fire Department v. Soo Line Railroad Co.*, 372 F. Supp. 422 (E.D. Wis. 1974), and *Town of Howard v. Soo Line Railroad Co.*, 63 Wis. 2d 500, 217 N.W.2d 329 (1974).

¶ 25. However, Markel's reliance on these cases is unpersuasive for two reasons.

¶ 26. First, all of these cases were decided before the legislature's 1977 revisions. Recall that the legislature acted in 1977 to remove the "such fires" language from Wis. Stat. § 26.21(1) and replace it with the broader language "forest fires." Thus, a reasonable interpretation prior to 1977 was that recovery under § 26.21(1) was limited to situations where a fire occurred due to a violation of Wis. Stat. § 26.20 and "such fires" caused by a railroad corporation, given most of the predecessor statute applied only to railroad corporations. Thus, it makes sense that these cases before 1977 involved railroad corporations.

¶ 27. Second, none of these cases cited by Markel conclude that Wis. Stat. § 26.21(1) is specifically limited to railroad corporations. Rather, these cases reference § 26.21(1) for other reasons. *See Bonnell*, 158 Wis. at 161 (concluding that the 1905 version of § 26.21(1) required a showing of gross negligence, but there is no commentary on a limitation to only railroads); *Allenton*, 372 F. Supp. at 423 (concluding that § 26.21(1) does not permit recovery of firefighting expenses if a claimant is not the owner of the property, but there is no commen-

tary on a limitation to only railroads); *Town of Howard,* 63 Wis. 2d at 503–04 (concluding that § 26.21 at that time did not permit a town to recover costs, but there is no commentary on a limitation to only railroads). Thus, while these cases involve railroad corporations, they are not binding precedent concerning the issue now before this court.

¶ 28. Accordingly, we conclude that recovery under Wis. Stat. § 26.21(1) is not limited to a specific class of tortfeasor such as railroad corporations, and a violation under Wis. Stat. § 26.20 is not a prerequisite for the applicability of § 26.21(1).

¶ 29. As a practical matter, it makes sense that the legislature would choose to severely punish all forest fire starting tortfeasors rather than just railroads, given the importance of forests and ecology in this state. Our forests are important not only to those who enjoy recreational activities and hunting, but they are also important to our ecology and our economy.

¶ 30. The people of Wisconsin have traditionally valued our forests. Clearly, Wisconsin's forests have long provided many opportunities for recreational activities, such as hunting, fishing, and hiking. *See* Wis. Cartographers' Guild, *Wisconsin's Past and Present: A Historical Atlas* 60–61 (1998); *see also* Martin Hintz, *Hiking Wisconsin* (1997) (identifying the many parks with hiking trails, canoeing, and other outdoor activities); Robert C. Willging, *On The Hunt: The History Of Deer Hunting In Wisconsin* (2008). Additionally, Wisconsin's timber industry has been a significant source of commercial activity since the 1830s. *See* Wis. Cartographers' Guild, *supra,* at 40. "Timber put the young state of Wisconsin in the national spotlight," and "[b]etween 1899 and 1905, Wisconsin led the nation in lumber production." *Id.*

67

¶ 31. A 2004 report states that Wisconsin's forest products industry "is the backbone of Wisconsin's economy." *See* Terry Mace et al., *Wisconsin's Forest Products Industry: Grow Wisconsin Through Sustainable Forestry*, Wisconsin Consortium on Biobased Industry, Feb. 2004.[18] In 2004: Wisconsin was the number one paper-making state in the nation and had been for the past 50 years; Wisconsin's forest products and processing produced 8.1 percent, or $18.7 billon, of the state's total industrial output; and Wisconsin's forests supported our tourism and recreational economy creating $5.5 billon annually in forest-based recreation. *Id.*

¶ 32. Despite the evident success of the timber industry, "[i]n the early lumbering days, more timber was lost to fire than was actually harvested." *See* Wis. Cartographers' Guild, *supra,* at 47. "Wasteful timber-cutting practices led to disastrous forest fires, including the deadly Peshtigo [Wisconsin] fire." *Id. See also* Denise Gess & William Lutz, *Firestorm at Peshtigo: A Town, Its People, and the Deadliest Fire in American History* (2002). "Today, wildfires still affect the logging, tourism, and recreational industries." *See* Wis. Cartographers' Guild, *supra,* at 47.

¶ 33. However, railroad corporations have not been the single or even the predominant offender when it comes to forest fires. Historically there have been a wide range of offenders who have shouldered the responsibility for causing forest fires. *See Forest Fires, by*

---

[18] This report may be found at http://www.bioeconomy.wi.gov/ (click on "Documents" and under subheading "Papers" click on "October 17, 2005, Forest Products Background Piece"). This website is the homepage of "The Consortium on Biobased Industry." The consortium was created by Governor Doyle's executive order #101 "Relating to the Development and Promotion of Biobased Industry" (dated May 27, 2005).

*Percentage Causes* (Wis. State Conservation Comm'n 1935) (graph illustration showing that between 1920–1933 the cause of forest fires was 30 percent smokers, 29 percent land clearing, 13 percent campfires, 12 percent arson, and 8 percent railroads); J.A. Mitchell & Neil LeMay, *Forest Fires and Forest-Fire Control in Wisconsin* 47–48 (Wis. State Conservation Comm'n 1952) (setting forth similar percentages as cited above for the years 1935–1949).

¶ 34. Early forestry legislation also lends support to the conclusion that a wide range of causes have been responsible for causing forest fires. *See* Mitchell & LeMay, *supra,* at 15–16 (identifying legislation between 1826—1895 aimed at limiting forest fires by punishment for starting fires and leaving them unextinguished, punishment for fire escaping one's own land, prohibiting burning between July—October, and requiring spark preventers for many types of engines).

¶ 35. Accordingly, given the importance of the forests to this state and the fact that forest fires have not been predominantly caused by railroad corporations, it makes sense that the legislature has chosen to severely punish all those responsible for starting a forest fire.

B. Gross negligence

¶ 36. Markel asserts that Wis. Stat. § 26.21(1) is not applicable in this case because Heritage Farms did not prove that Markel acted with "gross negligence." Markel's argument that "gross negligence" must be proven is based on this court's 1914 decision in *Bonnell,* which interpreted the phrase "wilfulness, malice or negligence" in the 1905 version of § 26.21(1) to require "gross negligence." *Bonnell,* 158 Wis. at 161. Heritage

Farms argues that the concept of gross negligence was eliminated in 1962 by this court's decision in *Bielski v. Schulze,* 16 Wis. 2d 1, 14–19, 114 N.W.2d 105 (1962).

¶ 37. We conclude that the plain language of Wis. Stat. § 26.21(1) does not require "gross negligence." The relevant portion provides in part:

> [One] may recover, in a civil action, double the amount of damages suffered, if the fires occurred through *willfulness, malice or negligence. . . .*

Wis. Stat. § 26.21(1) (emphasis added). While this language is identical to the statutory language interpreted in *Bonnell,* which involved the 1905 version of § 26.21(1), *see* Wis. Stat. § 1494–58 (1914), it has not been modified since this court's 1962 decision in *Bielski.*

¶ 38. In 1914, this court concluded in *Bonnell* that "gross negligence" was required under the 1905 version of Wis. Stat. § 26.21(1). *Bonnell,* 158 Wis. at 161; *see also* Wis. Stat. § 1494–58 (1914). The court stated that "the word 'negligence' is qualified or modified by the associated words and means such negligence as carries with it an element of wilfulness or malice; in other words, gross negligence." *Bonnell,* 158 Wis. at 161.

¶ 39. The concept of "gross negligence," however was abolished by this court in 1962. *Bielski,* 16 Wis. 2d at 14–19, *overruled in part on other grounds by Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 294 N.W.2d 437 (1980). The court concluded that "[o]nly by abolishing the present concept of gross negligence and considering such conduct as ordinary negligence and treating it in terms of degree on a comparative basis can an equitable and fair result be reached in all cases." *Bielski,* 16 Wis. 2d at 17–18.

¶ 40. While this abolishment alone would not necessarily alter the past interpretation in *Bonnell,* the legislature's actions subsequent to our 1962 abolishment lead us to conclude that "gross negligence" is not the standard in Wis. Stat. § 26.21(1). In 1977, the legislature *repealed and recreated* § 26.21, which resulted in substantive changes and dividing the statute into two subsections. *See* § 448u, ch. 29, Laws of 1977 (emphasis added). We generally presume that when the legislature enacts a statute, it is fully aware of the existing laws. *County of Dane v. Racine County,* 118 Wis. 2d 494, 499, 347 N.W.2d 622 (Ct. App. 1984) (citing *Mack v. Joint Sch. Dist. No. 3,* 92 Wis. 2d 476, 489, 285 N.W.2d 604 (1979)). As a result, we presume that the 1977 legislature would have known that common-law gross negligence was abolished in 1962, and thus, if the legislature meant to retain and memorialize "gross negligence" it would have either removed "negligence" from the statute or added "gross" to the statute when it made other substantive changes to the statute in 1977.

¶ 41. Because the legislature could not have been more clear in 1977 when it repealed and recreated Wis. Stat. § 26.21, we will not now insert the word "gross" into this statute and we will not delete the word "negligence" from the statute. As a result, we reject Markel's argument that Heritage Farms was required to prove that Markel acted with "gross negligence." The legislature used the word "negligence" in the statute; it did not add the phrase "gross negligence" to the statute. We presume that the legislature cast a wide net when punishing those who start forest fires. It presumably intended to include not only those who act willfully and maliciously but also those who act negligently. If the legislature did not intend to include those who act

71

negligently, it could have deleted the word "negligence." If the legislature did intend to include those who act negligently, what else could it have done but use the word negligence? We owe deference to that legislative determination to punish those who set forest fires whether willfully, maliciously or negligently. *See supra* note 9 (stating the legislature says in a statute what it means and means in a statute what it says).

## IV. CONCLUSION

¶ 42. We conclude that Wis. Stat. § 26.21(1) is not limited to a specific class of tortfeasor such as a railroad corporation, a violation under Wis. Stat. § 26.20 is not a prerequisite for the applicability of § 26.21(1), and the term "negligence" in § 26.21(1) does not require a showing of "gross negligence."

*By the Court.*—The decision of the court of appeals is reversed.

¶ 43. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). I write separately because I have concluded that Wis. Stat. § 26.20 (2007–08) establishes affirmative obligations for railroads and others who use spark-producing engines, such as locomotive, donkey, traction and portable engines, in areas that may cause forest fires, and that Wis. Stat. § 26.21(1) expands the potential award of damages caused by forest fires, from that which would otherwise be permitted under the common law, if the fires arise because of a failure to meet an obligation set out in § 26.20. Because there is no claim that any defendant failed to meet any § 26.20 obligation, § 26.21(1) has no application to the claims of the plaintiffs in this case. Accordingly, I would affirm the decision of the court of appeals and I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶ 44. This case arose out of a fire that the jury found was set by Jeffrey Knaack on March 3, 2003 at the Lake of the Woods Campground property and was not properly extinguished, permitting it to become the Crystal Lake Fire on April 14, 2003. Knaack had a burn permit issued by the Department of Natural Resources (DNR) that permitted him to lawfully set the fire at the Lake of the Woods Campground.

¶ 45. When the fire re-ignited and became the Crystal Lake Fire, it caused extensive damage to the plaintiffs' properties. To recover their damages, the plaintiffs brought common law claims of negligence, trespass and nuisance, which they tried before a jury. They succeeded on each claim.[1] The jury awarded damages in excess of $500,000.

¶ 46. Because the plaintiffs alleged that the jury award should be doubled pursuant to Wis. Stat. § 26.21(1) and the circuit court concluded that § 26.21(1) did not apply to their claims, the plaintiffs appealed to the court of appeals. The court of appeals affirmed the circuit court's conclusion that § 26.21(1) did not apply.[2] *Heritage Farms, Inc. v. Markel Ins. Co.,* 2008 WI App 46, ¶ 17, 309 Wis. 2d 217, 747 N.W.2d 762.

---

[1] Although the plaintiffs argue in their briefs that they may also have a breach of contract claim based on the burn permit the DNR issued to Knaack, no breach of contract claim was submitted to the jury. Accordingly, it is not an issue that I will address here.

[2] The court of appeals concluded that Wis. Stat. § 26.21(1) applies only to railroads. *Heritage Farms, Inc. v. Markel Ins. Co.,* 2008 WI App 46, ¶ 17, 309 Wis. 2d 217, 747 N.W.2d 762. As will become apparent in this dissent, I conclude that § 26.21(1) applies when an affirmative obligation set out in Wis. Stat.

Accordingly, it is the interpretation and application of § 26.21(1) that is the central focus of this review.

## II. DISCUSSION

### A. Standard of Review

¶ 47. The questions presented by this case require the interpretation and application of Wis. Stat. § 26.20 and Wis. Stat. § 26.21(1). The interpretation and application of statutes present questions of law that we review independently of the decisions previously made by the circuit court and the court of appeals, but benefiting from their analyses. *Marder v. Bd. of Regents of the Univ. of Wis. Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Statutory Interpretation

#### 1. General principles

¶ 48. Statutory interpretation "begins with the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). We assume that the meaning of a statute is expressed in the words the legislature chose. *Id.*, ¶ 44. The context in which the operative language appears is important too because a statute's meaning may be affected by the context in which it is used. *Id.*, ¶ 46.

¶ 49. If our focus on the statute's language yields a plain, clear meaning, then there is no ambiguity, and the statute is applied according to its plain terms. *Id.* If

§ 26.20 has not been met. It is not necessary to decide whether railroads are the only persons for whom § 26.20 establishes affirmative obligations.

74

the statutory language is unambiguous, it is unnecessary to consult extrinsic sources to facilitate interpretation. *Id.* However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses," then the statute is ambiguous. *Id.*, ¶ 47. When a statute is ambiguous, we may resort to extrinsic sources, such as legislative history, to assist our understanding of the statute's meaning. *Id.*, ¶ 48.

¶ 50. A review of statutory history is often helpful. "[S]tatutory history is part of a plain meaning analysis." *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581. "Statutory history encompasses the previously enacted[, amended and] repealed provisions of a statute." *Id.* "By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute." *Id.* "Therefore, statutory history is part of the context in which we interpret the words used in a statute." *Id.*

2. Statutory history

¶ 51. A review of the statutory history of Wis. Stat. § 26.20 and Wis. Stat. § 26.21(1) is very helpful in interpreting those sections because their relationship to each other has remained constant over the years. As we have explained, statutes should not be read in a vacuum, but must be read with an understanding of other statutes, in context, in order to best determine their plain meaning. *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 26, 294 Wis. 2d 274, 717 N.W.2d 781; *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 56, 133 N.W.2d 393 (1965).

¶ 52. When first enacted, Wis. Stat. § 26.20 and Wis. Stat. § 26.21(1) were Wis. Stat. ch. 61, § 1494–57 (Supp. 1906) and Wis. Stat. ch. 61, § 1494–58 (Supp.

1906), respectively, of the 1905 statutes.[3] In 1905, § 1494–57 imposed an affirmative obligation on those with "any logging locomotive, donkey or threshing engine, railway locomotive and all other engines, boilers and locomotives operated in, through or near, forest, brush or grass land," to employ netting on the engines "to give the most practicable protection against the escape of sparks, cinders or fire" from the engines. § 1494–57.

¶ 53. Wisconsin Stat. § 1494–57 also set out penalties to be levied by the State for failing to comply with the affirmative obligations contained in § 1494–57. The penalty provision provided that "[a]ny corporation by its officers, agents or employes, wilfully violating the provisions of this section shall be liable to a fine" of $50 to $500 for each violation. § 1494–57. The plain language of the penalty provision shows that penalties did not come into play until an affirmative obligation set out in § 1494–57 had not been met. Stated otherwise, no penalty could be levied unless the person who was obligated to perform certain tasks by § 1494–57 violated the provisions of § 1494–57.

¶ 54. Wisconsin Stat. § 26.20 continues to set out affirmative obligations relative to spark-producing engines. For example, it provides that all "road locomotives operated on any railroad" must have their engines equipped with spark arresters that meet or exceed the minimum performance and maintenance standards established by the State to reduce the chance of sparks escaping from the engine. § 26.20(2).[4]

---

[3] Wisconsin Stat. § 26.20 and Wis. Stat. § 26.21(1) were also known as sections 17 and 18, respectively, of ch. 264 of the Laws of 1905.

[4] Most of the provisions of Wis. Stat. § 26.20 set out obligations that are specifically limited to railroads. For ex

¶ 55. Wisconsin Stat. § 26.20 also continues to provide for penalties to be levied by the State on those who fail to meet their affirmative obligations when operating spark-producing engines. § 26.20(9). Subsection (9) provides:

> (a) Any corporation, by its officers, agents, or employees, violating this section, shall forfeit not more than $500.
>
> (b) Any corporation, by its officers, agents or employees, willfully violating this section shall be fined not more than $1,000.
>
> (c) Any conductor, individual in charge of a train or officer, agent or employee of a railway who violates this section shall forfeit not more than $500.

As was the case with Wis. Stat. ch. 61, § 1494–97 (Supp. 1906), the provisions of the penalty subsection of § 26.20 do not come into play until one who has an affirmative obligation set out in § 26.20 fails to meet such an obligation and therefore, is "violating this section." § 26.20(9).

---

ample, § 26.20(4) requires that those who operate a railway must clear the right-of-way of all brush, logs and material that may provide fuel for a fire. Section 26.20(5) requires corporations operating railroads to prevent their employees from depositing live coals or ashes upon the tracks outside of the yard limits, unless those coals are immediately extinguished. And § 26.20(7) requires those operating a railroad during the dangerously dry season to provide fire patrols when requested to do so. However, the affirmative obligations of those operating engines that produce sparks is not necessarily limited to railroads, as § 26.20(8) permits inspection of "any locomotive, donkey, or threshing engine, railway locomotive, and all other engines, boilers, and locomotives operated in, through or near forest, brush, or grass land."

¶ 56. The relationship between the affirmative obligations set out in various subsections of Wis. Stat. § 26.20 and the penalty provision of § 26.20(9) assists in understanding the plain meaning of Wis. Stat. § 26.21(1). This is so because § 26.21(1) begins, "In addition to the penalties provided in s. 26.20." After that threshold is met, § 26.21(1) provides an opportunity to double the damages a property owner may recover. However, the damages that the property owner suffered must have arisen from a failure to meet an affirmative obligation set out in § 26.20, because it is only from a violation of one of § 26.20's provisions that a penalty may be levied by the State. Stated otherwise, a plaintiff employing § 26.21(1) could never obtain damages that are "[i]n addition to the penalties provided in s. 26.20" if the conduct that caused the fire did not violate § 26.20, thereby permitting the State to assess a penalty under § 26.20.[5]

---

[5] Lest there be confusion, I point out that whether the State actually assesses a penalty that is "provided" under Wis. Stat. § 26.20(9) is not determinative of whether a Wis. Stat. § 26.21(1) claim is available. Rather, it is the type of conduct that drives the availability of a remedy under § 26.21(1), just as it was the type of conduct that was determinative of whether a remedy under Wis. Stat. ch. 61, § 1494–58 (Supp. 1906) was available. As we explained in *Bonnell v. Chicago, St. P., M. & O. Ry. Co.*, 158 Wis. 153, 147 N.W. 1046 (1914), when interpreting Wis. Stat. ch. 61, § 1494–57 (Supp. 1906) in regard to whether the second question in the special verdict was properly posed, "[that question] describes and covers substantially in the language of the statute the duty imposed upon the defendant by that statute." *Id.* at 158. We noted, "[h]ere was a case where the statute required the defendant to use a certain safety appliance described in the statute [§ 1494–57] and in this question." *Id.* at 159.

Wisconsin Stat. § 26.21(1) states that it comes into play "[i]n addition to the penalties provided in s. 26.20." It does not

¶ 57. Additionally, were it not that the damages that a property owner seeks to double under Wis. Stat. § 26.21(1) arose from the same conduct that could support a penalty under Wis. Stat. § 26.20(9), the phrase, "In addition to the penalties provided in s. 26.20" would have no meaning. It is a basic premise of statutory construction that all words in a statute must be given meaning. *Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992).

¶ 58. My reading of Wis. Stat. § 26.21(1) is consistent with the statutory history of § 26.21(1). In 1905, Wis. Stat. ch. 61, § 1494–58 (now § 26.21(1)) provided in relevant part:

> In addition to the penalties provided in the preceding section of this act, the United States, the state, the county or private owners, whose property is injured or destroyed by such fires, may recover, in a civil action, double the amount of damages suffered, if the fires occurred through wilfullness, malice or negligence.

In 1905, the "preceding section of this act" was Wis. Stat. ch. 61, § 1494–57, the predecessor of Wis. Stat. § 26.20. In 1905, a property owner could employ the double damage provisions of § 1494–58 if there had been a violation of the "preceding section." Then, the "preceding section" was § 1494–57. Without failing to meet an affirmative obligation set out in § 1494–57, there would be no grant of power to the State to assess a penalty under § 1494–57, the section preceding § 1494–58. Therefore, in 1905, a property owner could not avail himself of double damages for a fire that was not caused

---

say that § 26.21(1) may be employed in addition to the penalties "actually assessed" under Wis. Stat. § 26.20. Accordingly, the State's action or lack thereof in assessing a penalty that is provided in § 26.20 does not affect the applicability of § 26.21(1).

79

by a failure to meet the affirmative obligations set out in § 1494–57.

¶ 59. I note that Wis. Stat. § 26.21(1) remains in much the same form as it was when enacted in 1905. It provides in relevant part:

> In addition to the penalties provided in s. 26.20, the United States, the state, the county or private owners, whose property is injured or destroyed by forest fires, may recover, in a civil action, double the amount of damages suffered, if the fires occurred through willfulness, malice or negligence.

The provision for double damages and attorney fees remains connected to the preceding statute, now Wis. Stat. § 26.20, because § 26.21(1) directs that it is available "[i]n addition to the penalties provided in s. 26.20." This linkage between the two statutes has been constant since 1905.

¶ 60. Furthermore, the term "in addition to" is found in other sections of ch. 26, and in each instance, the relief that is "in addition to" that previously provided is based on the same conduct for which a previous penalty could have been assessed. For example, Wis. Stat. § 26.05(3)(c) provides that "in addition to any other penalty," a person who violates § 26.05 (timber theft), or a rule promulgated under it, must pay the reasonable costs incurred to establish the volume and value of the timber cut and removed. Wisconsin Stat. § 26.09(2) and (3)(c) provide remedies that are grounded in the unauthorized cutting of raw forest products. Section 26.09(2) provides, "In addition to any other enforcement action," and § 26.09(3)(c) provides, "[i]n addition to the award under par. (b)." Without the unauthorized cutting of raw forest products, neither subsection (2) nor (3)(c) would come into play. The linkage to conduct that will permit the State to assess a penalty is a necessary part of the

interpretation and application of § 26.21(1), just as it is for the interpretation and application of §§ 26.05(3)(c), 26.09(2) and 26.09(3)(c).

¶ 61. Accordingly, I conclude that the plain meaning of Wis. Stat. § 26.21(1) requires that a claim for double damages and attorney fees under § 26.21(1) must be based on a fire that arose because of a defendant's failure to meet an affirmative obligation under Wis. Stat. § 26.20. Because none of the plaintiffs' claims arose because of a fire caused by a failure to meet an affirmative obligation set out in § 26.20, § 26.21(1) has no application here.

C. Majority opinion

¶ 62. The majority opinion asserts that Wis. Stat. § 26.21(1) is not limited to railroads.[6] I agree that § 26.21(1) is not necessarily limited to railroads, but that does not answer the question that the case really poses, which is whether § 26.21(1) is applicable when the conduct underlying the lawsuit does not violate Wis. Stat. § 26.20. My analysis leads me to conclude that § 26.21(1) is not applicable in those circumstances. Furthermore, as I have explained above, no words need be added to or subtracted from § 26.21(1) to conclude that it does not apply to the plaintiffs' claims.

¶ 63. The major problem with the majority opinion's analysis is that while it acknowledges the historic link between conduct that violated Wis. Stat. ch. 61, § 1494–57 (Supp. 1906) (now Wis. Stat. § 26.20) and a claim for damages under Wis. Stat. ch. 61, § 1494–58 (Supp. 1906) (now Wis. Stat. § 26.21(1)),[7] it

---

[6] Majority op., ¶ 14.
[7] Majority op., ¶ 15.

does not analyze how the plaintiffs' claims for damages are "[i]n addition to the penalties provided in s. 26.20." Instead, it posits that were the introductory phrase not present, a plaintiff who has suffered damages caused by a fire may be met with the defense that a State penalty imposed under § 26.20(9) is the only consequence of the fire.[8]

¶ 64. However, damages based on common law claims for negligence, trespass and nuisance have long been available, as the plaintiffs' jury verdict demonstrates. Furthermore, statutes are not to be interpreted as changing the common law unless the legislature explicitly states that it is its purpose to do so. *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 74, 307 N.W.2d 256 (1981). There is no statement in either Wis. Stat. § 26.20 or Wis. Stat. § 26.21(1), explicit or implied, that the legislature was changing any common law claim that could be based on a fire.

¶ 65. The majority opinion also concludes that there is no longer a linkage between Wis. Stat. § 26.20 and Wis. Stat. § 26.21(1) because in 1977 the legislature placed the provisions in two separate sections and changed the words "such fires" to "forest fires."[9] I am unpersuaded.

¶ 66. First, the form the legislature used for statutes in 1905 was to include many provisions of ch. 264 of the Laws of 1905 in one section, Wis. Stat. ch. 61, § 1494 (Supp. 1906), with serial sections for differing provisions. Second, "forest fire" had a statutory definition in 1977;[10] however, forest fire had no statutory

---

[8] Majority op., ¶ 20.

[9] Majority op., ¶ 15.

[10] The definition of forest fires was set out in Wis. Stat. § 26.11(2) in 1977; it now appears in Wis. Stat. § 26.01(2):

82

definition in 1905. Furthermore, the term, "forest fires," was used in the title of Wis. Stat. ch. 61, § 1494–58 (Supp. 1906), just as it is used in the title of Wis. Stat. § 26.21 today. Third, it is just as logical that "such fires" was replaced with "forest fires" because the legislature wanted to clarify that runaway fires that were started by sparking engines, but burned prairie grasslands rather than forests, came within the ambit of § 26.21(1), even though forests were not burned by such runaway fires.[11] However, whatever the reason for the statutory amendment from "such fires" to "forest fires," none of the proffered reasons in the majority opinion do anything to explain the introductory phrase, "[i]n addition to the penalties provided in s. 26.20," which phrase draws into § 26.21(1) the conduct of Wis. Stat. § 26.20.

¶ 67. Furthermore, I do not agree that the DNR's use of language in the burn permit that is similar to that found in Wis. Stat. § 26.21(1) is the DNR's interpretation of § 26.21(1); or even if it were, that it is of any assistance in determining the plain meaning of § 26.21(1). First, nowhere on the burn permit is there a reference to § 26.21(1), although Wis. Stat. § 26.12(5), Wis. Stat. §§ 19.31–19.39, Wis. Stat. § 23.45 and Wis. Stat. § 25.11(2) are referenced. Second, the language follows the question: "What is the penalty for burning without a permit?" While it may have been possible to argue that this language created a contract with the DNR, of which the property owners who suffered fire damage were third party beneficiaries, that claim is not before the court.

"Forest fire" means uncontrolled, wild, or running fires occurring on forest, marsh, field, cutover, or other lands . . . .

[11] Ever since forest fire was defined in the statutes, forest fire has included fires that did not burn trees, e.g., fires that burned marsh lands, as well as those fires that did burn forests.

83

¶ 68. And finally, the majority opinion contends that Wis. Stat. § 26.21(1) "is drafted from the perspective of who may bring an action."[12] While I do not disagree with that statement, it does not encompass the complete directive of the statute. The statute speaks to particular conduct, through its reference to the penalties of Wis. Stat. § 26.20, and those penalties can be afforded only for fires that were caused by failing to meet a statutory obligation of § 26.20. Section 26.21(1) also uses the term "the fires," rather than "a fire," indicating that not all fires that cause damage to property come within the ambit of § 26.21(1).

## III. CONCLUSION

¶ 69. I have concluded that Wis. Stat. § 26.20 establishes affirmative obligations for railroads and others who use spark-producing engines, such as locomotive, donkey, traction and portable engines, in areas that may cause forest fires, and that Wis. Stat. § 26.21(1) expands the potential award of damages caused by forest fires, from that which would otherwise be permitted under the common law, if the fires arise because of a failure to meet an obligation set out in § 26.20. Because there is no claim that any defendant failed to meet any § 26.20 obligation, § 26.21(1) has no application to the claims of the plaintiffs in this case. Accordingly, I would affirm the decision of the court of appeals and I respectfully dissent from the majority opinion.

¶ 70. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this dissent.

---

[12] Majority op., ¶ 23.