HERITAGE FARMS, INC., Audrey Bunchkowski, Russell Bunchkowski, Ruth Dutcher, Howard Dutcher, Sally Freitag, Amy Holzwart, James Holzwart, Kathleen Khin, Glenwood Zellmer, Daryl Lloyd, Donald Lloyd, Judy Maas, Jeffrey Maas, Carolyn Mueller, Lois Rucich, George Rucich, Donna Semrow, Harland Semrow, Beverly Singer, Norman A. Singer Trust, Joan Singer, Gordon Singer, Singer Living Trust, Inga Stoellinger, Otto Stoellinger, Catherine Swanton, Swanton Family Trust, Christine Toliver, Alan Toliver, Krista Zimmer and Norman Zimmer, Plaintiffs-Appellants-Petitioners,

HARTFORD INSURANCE COMPANY of the Midwest, Auto-Owners Insurance Company, Safeco Insurance Company of America and Acuity, a mutual insurance company, Involuntary-Plaintiffs,

v.

MARKEL INSURANCE COMPANY, J.J.J. Recreation Corporation d/b/a Lake of the Woods Campground, American Family Mutual Insurance Company and Jeffrey Knaack, Defendants-Respondents.

Ted SCHWOCHERT, Paul B. Schwochert, Helen Schwochert and Sue Schroeder, Plaintiffs-Appellants-Petitioners,

125

v.

MARKEL INSURANCE COMPANY, J.J.J. Recreation
Corporation d/b/a Lake of the Woods Camp-
ground, American Family Mutual Insurance
Company and Jeffrey Knaack,
Defendants-Respondents.

Supreme Court

*No. 2010AP355. Oral argument November 1, 2011.
—Decided March 16, 2012.*

2012 WI 26

(Also reported in 810 N.W.2d 465.)

130

For the plaintiffs-appellants-petitioners there were briefs filed by *Mark L. Thomsen, Sarah F. Kaas* and *Cannon & Dunphy, S.C.*, Brookfield, *Clay R. Dutcher* and *Dutcher Law Office, L.L.C.*, Wautoma and *George W. Curtis, Brian P. Beisenstein* and *Curtis Law Office*, Oshkosh and oral argument by *Mark Thomsen.*

—

For the defendants-respondents there was a brief filed by *John V. McCoy, Brian D. Parish* and *McCoy Law Group, S.C.,* Waukesha, *Mark S. Henkel* and *First Law Group,* Stevens Point and oral argument by *John V. McCoy.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, *Heritage Farms, Inc. v. Markel Insurance Co.,* 2011 WI App 12, 331 Wis. 2d 64, 793 N.W.2d 896, that affirmed an order by the Waushara County Circuit Court[1] granting in part and denying in part the plaintiffs' motion for payment of double damages and reasonable costs for legal representation under Wis. Stat. § 26.21(1) (2003–04)[2] and for 12 percent interest thereon.

¶ 2. The plaintiffs consist of Heritage Farms, Inc. and several other landowners (collectively, Heritage Farms) whose properties were extensively damaged as a

---

[1] The Honorable John V. Finn presided.

[2] Wisconsin Stat. § 26.21 (2003–04), "Civil liability for forest fires," states:

> (1) In addition to the penalties provided in s. 26.20, the United States, the state, the county or private owners, whose property is injured or destroyed by forest fires, may recover, in a civil action, double the amount of damages suffered, if the fires occurred through willfulness, malice or negligence. In a civil action, a court may award reasonable costs for legal representation to provide owners recovering damages under this subsection.

> (2) Persons causing fires in violation of this chapter shall be liable to the state in an action for debt, to the full amount of all damages done to the state lands and for all expenses incurred by the towns fighting forest fires and shall be liable to municipalities in an action for debt, to the full amount of all damages to the municipal lands and for all expenses incurred by the municipalities fighting such fires.

All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

result of a 2003 forest fire in Marquette and Waushara Counties, commonly referred to as the Crystal Lake Fire. A jury determined that the fire was negligently caused by Jeffrey Knaack (Knaack), who ignited and failed to properly extinguish a burn pile at the Lake of the Woods Campground. Post-verdict, Heritage Farms moved for judgment against Knaack, the campground, and their respective insurers (collectively, Markel)[3] for double damages and reasonable costs for legal representation pursuant to Wis. Stat. § 26.21(1).

¶ 3. This is the second time these parties have appeared before us. *See Heritage Farms, Inc. v. Markel Ins. Co.* (hereafter *Heritage Farms I*)[4], 2009 WI 27, 316 Wis. 2d 47, 762 N.W.2d 652. In *Heritage Farms I,* we held that civil liability for forest fires under Wis. Stat. § 26.21(1) is not limited to a specific class of tortfeasor such as a railroad corporation and that a violation under Wis. Stat. § 26.20[5] is not a prerequisite to the application of Wis. Stat. § 26.21(1). *Id.,* ¶ 13. We further concluded that § 26.21(1) does not require a showing of gross negligence. *Id.,* ¶ 37.

---

[3] Knaack was insured against personal liability by American Family Mutual Insurance Company, and the Lake of the Woods Campground was insured against commercial liability by Markel Insurance Company.

[4] We use the case name *Heritage Farms I* to identify this court's first published decision involving these same parties and to distinguish that first published decision from the decision at bar.

[5] Wisconsin Stat. § 26.20, "Fire protection devices," generally outlines the duties of those corporations that operate on or maintain a railway. *See Heritage Farms, Inc. v. Markel Ins. Co.* (*Heritage Farms I*), 2009 WI 27, ¶ 11 & n.7, 316 Wis. 2d 47, 762 N.W.2d 652.

¶ 4. After our decision in *Heritage Farms I*, Heritage Farms again requested the circuit court to award double damages and reasonable costs for legal representation under Wis. Stat. § 26.21(1). The circuit court determined that the decision to award double damages and reasonable costs for legal representation under § 26.21(1) is subject to the court's discretion. The circuit court awarded Heritage Farms its attorney fees and costs. However, the court declined to exercise its discretion to double Heritage Farms' damages, reasoning that Knaack's conduct did not necessarily warrant punishment beyond the payment of compensatory damages. The court of appeals affirmed.

¶ 5. Heritage Farms petitioned this court for review, which we granted. We now reverse the decision of the court of appeals and remand to the circuit court with instructions to enter judgment in accordance with this opinion.

¶ 6. This case presents several issues for our review:

(1) Pursuant to Wis. Stat. § 26.21(1), if it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, is the property owner entitled to double damages as a matter of course, or is an award of double damages discretionary?

 (a) Assuming we conclude that the property owner is entitled to double damages under § 26.21(1) as a matter of course, should we apply our holding only prospectively?

 (b) Assuming we conclude that an award of double damages under § 26.21(1) is discretionary, is the decision to award double damages subject to the circuit court's discretion or reserved for the fact-finder? Relatedly, does a

134

party have a constitutional right to have a jury decide whether to award double damages under § 26.21(1)?

(i) Assuming we conclude that the decision to award double damages under § 26.21(1) is subject to the circuit court's discretion, what standard, if any, should the court follow in making its determination?

(2) Assuming we conclude that Heritage Farms is entitled to double damages under Wis. Stat. § 26.21(1) as a matter of course, is Heritage Farms entitled to 12 percent interest on that amount from the date of the jury's verdict pursuant to Wis. Stat. § 814.04(4)? Is Heritage Farms entitled to 12 percent interest on its award of attorney fees and costs from the date of the jury's verdict?

(a) Is § 814.04(4) unconstitutional on its face or as applied to Markel?

¶ 7. We conclude that pursuant to Wis. Stat. § 26.21(1), if it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, then the property owner is entitled to double damages as a matter of course. We apply this holding retrospectively. Consequently, in this case, because the jury determined that Heritage Farms' property was damaged by a forest fire caused by Knaack's negligence, Heritage Farms is entitled to double damages as a matter of course.

¶ 8. We further conclude that pursuant to Wis. Stat. § 814.04(4), Heritage Farms is entitled to 12 percent interest on its double damages award from the date of the jury's verdict. At the same time, we determine that Heritage Farms is entitled to 12 percent interest on its award of attorney fees and costs only from the date of that award, not from the date of the jury's verdict. Finally, we conclude that Markel has failed to prove

135

beyond a reasonable doubt that § 814.04(4) is unconstitutional on its face or as applied to Markel.

## I. FACTUAL BACKGROUND
## AND PROCEDURAL POSTURE

¶ 9. The facts and procedural history of this case were recited in *Heritage Farms I* and need not be repeated at length here. *See* 316 Wis. 2d 47, ¶¶ 3–4. It is sufficient to state that Heritage Farms' property was extensively damaged by the 2003 Crystal Lake Fire. The fire originated when a large burn pile, ignited lawfully by Knaack six weeks earlier, flared up and escaped the Lake of the Woods Campground. The fire burned 572 acres of land before it was finally contained.

¶ 10. Heritage Farms filed a civil action against Markel, claiming negligence, trespass, and nuisance, and seeking double damages and reasonable costs for legal representation under Wis. Stat. § 26.21(1). The negligence, trespass, and nuisance claims were submitted to a jury. On October 13, 2006, the jury returned a verdict in favor of Heritage Farms on all three claims and awarded Heritage Farms $568,422 in compensatory damages.

¶ 11. Post-verdict, Heritage Farms moved for judgment against Markel for double damages and reasonable costs for legal representation under Wis. Stat. § 26.21(1). The circuit court denied the motion, concluding that § 26.21(1) applies only to defendants who are railroad corporations. Accordingly, the circuit court entered judgment on the jury verdict. On July 17, 2007, Markel paid the entirety of that judgment plus interest.

¶ 12. Heritage Farms appealed, and the court of appeals affirmed.

¶ 13. In *Heritage Farms I,* we reversed that decision of the court of appeals. 316 Wis. 2d 47. We held that

Wis. Stat. § 26.21(1) is not limited to a specific class of tortfeasor such as a railroad corporation and that a violation under Wis. Stat. § 26.20 is not a prerequisite to the application of Wis. Stat. § 26.21(1). *Id.,* ¶ 13. We further concluded that § 26.21(1) does not require a showing of gross negligence. *Id.,* ¶ 37.

¶ 14. Markel moved for reconsideration, which we denied on May 28, 2009. *Heritage Farms, Inc. v. Markel Ins. Co.,* No. 2007AP983, unpublished order (Wis. May 28, 2009).

¶ 15. The issues before us today arose subsequent to our decision in *Heritage Farms I.* On August 20, 2009, upon remand, Heritage Farms again moved the circuit court for payment of double damages and reasonable costs for legal representation under Wis. Stat. § 26.21(1). Heritage Farms also requested 12 percent interest on those amounts from the date of the jury's verdict, pursuant to Wis. Stat. § 814.04(4).[6]

¶ 16. Markel opposed Heritage Farms' motion, arguing that Wis. Stat. § 26.21(1) does not mandate the payment of double damages and reasonable costs for legal representation. Rather, Markel contended, the statute's plain language is permissive, making clear that the determination of whether to impose double damages and costs for legal representation is left to the fact-finder's discretion. Markel maintained that double damages and costs for legal representation are inappropriate in this case, given the jury's finding that Knaack was "negligent, but no more."

---

[6] Wisconsin Stat. § 814.04(4), "Interest on verdict," provides, in relevant part: "[I]f the judgment is for the recovery of money, interest at the rate of 12% per year from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs."

¶ 17. Markel further argued that even if the circuit court now awards Heritage Farms double damages and reasonable costs for legal representation, Heritage Farms is still not entitled to interest on those amounts from the date of the jury's verdict because, as of that date, such amounts were not known and determined. In any case, Markel asserted, imposing 12 percent interest under Wis. Stat. § 814.04(4) is unconstitutional. Markel reasoned that a 12 percent interest rate is so severe that it tends to deter defendants from defending themselves on appeal.

¶ 18. On November 19, 2009, the circuit court held a hearing on Heritage Farms' motion, ultimately granting it in part and denying it in part. The circuit court determined that the decision to award double damages and reasonable costs for legal representation under Wis. Stat. § 26.21(1) is subject to the court's discretion. The circuit court awarded Heritage Farms its attorney fees and costs. However, the court declined to impose interest on those amounts from the date of the jury's verdict, explaining that as of that date, the parties were still operating under the ruling that § 26.21(1) did not apply to Markel.

¶ 19. The circuit court had a more difficult time deciding whether to award Heritage Farms double damages. The court lamented the lack of guidance as to what standard it should apply in exercising its discretion: "[W]hat I'm struggling with is whether or not, in addition to paying the compensatory damages, the person who started the fire should be punished by having double damages, and without any criteria, it's really hard to do . . . ." Ultimately, the circuit court was not persuaded that it should exercise its discretion to double Heritage Farms' damages. The court reasoned

138

that Knaack's conduct did not necessarily warrant punishment beyond the payment of compensatory damages.

¶ 20. The circuit court entered judgment accordingly on December 23, 2009, granting Heritage Farms' motion for payment of attorney fees and costs but denying Heritage Farms' motion for payment of double damages and for 12 percent interest on any attorney fees, costs, or additional damages awarded from the date of the jury's verdict. On February 12, 2010, Markel paid the judgment of attorney fees and costs, plus interest running from November 19, 2009.

¶ 21. Heritage Farms moved the circuit court for reconsideration, which the court denied. The circuit court reiterated its determination that an award of double damages under Wis. Stat. § 26.21(1) is discretionary. Because § 26.21(1) uses the word "may," the circuit court construed the statute as "an invitation for the Court to consider whether or not the specific facts in a specific case are such that the defendant ought to be punished in addition to paying for his, his [sic] negligence . . . ."

¶ 22. Heritage Farms appealed,[7] maintaining that double damages under Wis. Stat. § 26.21(1) are mandatory or, at the very least, presumed. The court of appeals disagreed and affirmed. *Heritage Farms,* 331 Wis. 2d 64. The court of appeals, like the circuit court, concluded that the decision to award double damages under § 26.21(1) is subject to the circuit court's discretion. *Id.,* ¶ 11. The court of appeals pointed out that the

[7] Markel did not cross-appeal from the circuit court's order granting Heritage Farms' motion for payment of reasonable costs for legal representation under Wis. Stat. § 26.21(1). Accordingly, that portion of the circuit court's order is not before us.

139

legislature used the permissive word "may" in § 26.21(1) when describing a property owner's right to recover double damages in the event that a forest fire results from willfulness, malice, or negligence. *Id.*, ¶ 10. In contrast, the court of appeals explained, the legislature used the mandatory word "shall" in § 26.21(2) when describing a person's liability to the State and to municipalities for damage done to state and municipal lands and for expenses incurred in fighting forest fires. *Id.* According to the court of appeals, the legislature's use of the words "may" in § 26.21(1) and "shall" in § 26.21(2) is evidence of its awareness that the words have distinct meanings. *Id.*, ¶ 11. Consequently, the court of appeals concluded that § 26.21(1) should be interpreted as permissive, not mandatory. *Id.* The court of appeals further rejected Heritage Farm's argument that double damages under § 26.21(1) are presumed. *Id.*, ¶ 13. Finally, because the court of appeals affirmed the circuit court's denial of double damages under § 26.21(1), it declined to address whether Heritage Farms was entitled to 12 percent interest on such damages from the date of the jury's verdict. *Id.*, ¶ 15.

¶ 23. Heritage Farms petitioned this court for review, which we granted on April 12, 2011.

## II. STANDARD OF REVIEW

¶ 24. This case presents two principal issues. First, we must determine whether Heritage Farms is entitled to double damages under Wis. Stat. § 26.21(1) as a matter of course, or whether an award of double damages is discretionary. Second, assuming Heritage Farms is entitled to double damages under § 26.21(1) as a matter of course, we must determine whether Heritage Farms is entitled to 12 percent interest on its

140

award of double damages from the date of the jury's verdict, pursuant to Wis. Stat. § 814.04(4). Relatedly, Heritage Farms requests 12 percent interest on its award of attorney fees and costs from the date of the jury's verdict. Both of these principal issues are questions of statutory interpretation and application. The interpretation and application of a statute are questions of law that we review de novo while benefitting from the analyses of the court of appeals and circuit court. *Affeldt v. Green Lake Cnty.*, 2011 WI 56, ¶ 32, 335 Wis. 2d 104, 803 N.W.2d 56.

¶ 25. In addition, Markel raises several derivative questions, including whether our interpretation of Wis. Stat. § 26.21(1) should apply only prospectively, and whether Wis. Stat. § 814.04(4) is unconstitutional. The first is a question of policy to be determined by this court. *See Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 613, 563 N.W.2d 154 (1997); *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 108, 280 N.W.2d 757 (1979). The second is a question of law that we also review independently. *See State v. Smith*, 2010 WI 16, ¶ 8, 323 Wis. 2d 377, 780 N.W.2d 90.

### III. ANALYSIS

¶ 26. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Because we presume that the legislature " 'says in a statute what it means and means in a statute what it says there,' " *id.*, ¶ 39 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)), statutory interpretation begins with the

language of the statute, *id.,* ¶ 45. Statutory language is given its common and ordinary meaning, "except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* If the meaning is plain, our inquiry ends. *Id.*

¶ 27. At the same time, statutory language cannot be interpreted in isolation but rather as part of a whole, in relation to the language of surrounding or closely-related statutes. *Id.,* ¶ 46. In addition, we must construe statutory language reasonably, in order to avoid absurd results. *Id.* An unreasonable interpretation is one that contravenes the statute's manifest purpose. *See id.,* ¶ 49.

¶ 28. Generally, we do not consult extrinsic sources of legislative intent, such as legislative history, unless the statute's language is ambiguous. *Id.,* ¶ 50. Statutory language is ambiguous if it reasonably gives rise to more than one meaning. *Id.,* ¶ 47.

¶ 29. To resolve the two principal issues in this case, we must apply the above canons of statutory interpretation to Wis. Stat. §§ 26.21(1) and 814.04(4). We analyze the statutes in turn.

A. Wisconsin Stat. § 26.21(1)

1. Whether Heritage Farms is entitled to double damages under Wis. Stat. § 26.21(1) as a matter of course, or whether an award of double damages is discretionary

¶ 30. Wisconsin Stat. § 26.21(1) provides, in relevant part, that "private owners, whose property is

142

injured or destroyed by forest fires, may recover, in a civil action, double the amount of damages suffered, if the fires occurred through willfulness, malice or negligence." In this case, the jury found that Heritage Farm's property was injured or destroyed by a forest fire that occurred through Knaack's negligence. Heritage Farms argues that, as a result, double damages under § 26.21(1) are mandatory, or at least presumed. Markel, on the other hand, maintains that an award of double damages under § 26.21(1) is discretionary.

■

¶ 31. We agree with Heritage Farms that it is entitled to double damages under Wis. Stat. § 26.21(1). Our conclusion, however, is based on a slightly different rationale than that espoused by Heritage Farms. We conclude that pursuant to § 26.21(1), if it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, then the property owner is entitled to double damages as a matter of course.

■

¶ 32. We begin with the language of Wis. Stat. § 26.21(1). Again, § 26.21(1) states that a property owner, "whose property is injured or destroyed by forest fires, may recover, in a civil action, double the amount of damages suffered, if the fires occurred through willfulness, malice or negligence." The parties focus their arguments on the meaning of the phrase "may recover." The word "may" is ordinarily used to grant permission or to indicate possibility. *See The American Heritage Dictionary of the English Language* 1112 (3d ed. 1992). Accordingly, when interpreting a statute, we generally construe the word "may" as permissive. *Hitchcock v.*

*Hitchcock,* 78 Wis. 2d 214, 220, 254 N.W.2d 230 (1977); *Schmidt v. Dep't. of Local Affairs & Dev.,* 39 Wis. 2d 46, 53, 158 N.W.2d 306 (1968); *City of Wauwatosa v. Milwaukee Cnty.,* 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963). By contrast, we presume that the word "shall" is mandatory. *Eby v. Kozarek,* 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990); *Karow v. Milwaukee Cnty. Civil Serv. Comm'n,* 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978); *State v. Rosen,* 72 Wis. 2d 200, 205, 240 N.W.2d 168 (1976). The distinction is particularly significant when the words "may" and "shall" are used in the same statutory section, as they are in § 26.21. While § 26.21(1) provides that a property owner, whose property is injured or destroyed by a forest fire, "may" recover, in a civil action, double damages against the tortfeasor, § 26.21(2) directs that the tortfeasor "shall" be liable to the State and to municipalities for all damages done to state and municipal lands and for all expenses incurred in fighting the forest fire. When the words "may" and "shall" are used in the same statutory section, we "can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Karow,* 82 Wis. 2d at 571.

¶ 33. In light of the foregoing, Markel contends that the court of appeals properly construed the plain language of Wis. Stat. § 26.21(1) as merely permitting Heritage Farms to recover double damages, as opposed to mandating it.

¶ 34. While recognizing that we generally construe the word "may" as permissive, Heritage Farms urges us to nevertheless read the phrase "may recover" in Wis. Stat. § 26.21(1) as "shall recover," in order to carry out the statute's legislative intent. As Heritage Farms points out, this court has occasionally ruled that the word "may"

in a statute can properly be construed as mandatory when such a construction is necessary to carry out the intent of the legislature. *See, e.g., Miller v. Smith,* 100 Wis. 2d 609, 616–17, 302 N.W.2d 468 (1981); *Klisurich v. DHSS,* 98 Wis. 2d 274, 278–79, 296 N.W.2d 742 (1980); *Hitchcock,* 78 Wis. 2d at 220; *Schmidt,* 39 Wis. 2d at 53; *City of Wauwatosa,* 22 Wis. 2d at 191–92. Relying on our decision in *Heritage Farms I,* Heritage Farms contends that § 26.21(1) expresses the legislature's intent to "severely punish" those responsible for starting forest fires. *See* 316 Wis. 2d 47, ¶¶ 29, 35. According to Heritage Farms, severe punishment under § 26.21(1) is best carried out through a mandatory, as opposed to a merely discretionary, recovery of double damages.

¶ 35. As their arguments make clear, the parties focus on the phrase "may recover" in Wis. Stat. § 26.21(1) only as it relates to double damages. However, in fact, § 26.21(1) states that a property owner "may recover, *in a civil action,* double the amount of damages suffered . . . ." (Emphasis added.) Accordingly, we must interpret the phrase "may recover" in relation to the entire clause that it precedes: "in a civil action, double the amount of damages suffered."

¶ 36. With that in mind, we decline to rewrite Wis. Stat. § 26.21(1), as Heritage Farms suggests, by replacing the word "may" with the word "shall." The cases in which this court construed the word "may" in a statute as "shall," or vice-versa, must be understood in context. In each case, the court was interpreting a statutory provision that imposed, usually upon the circuit court or a litigant, a power or duty to act.[8] The

[8] *See, e.g., Eby v. Kozarek,* 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990) (interpreting Wis. Stat. § 655.445(1) (1987–88), which provided that a claimant under chapter 655 (1987–88)

issue then was whether the power or duty to act was discretionary or mandatory. To make that determination, we considered such factors as the statute's objectives, the statute's history, the consequences that would follow from the alternative interpretation, and whether the statute imposed a penalty for the failure to exercise

"shall, within 15 days after the date of filing an action in court, file a request for mediation"); *Miller v. Smith,* 100 Wis. 2d 609, 616, 302 N.W.2d 468 (1981) (interpreting Wis. Stat. § 807.12(2) (1977–78), which provided that "[w]hen the name of such defendant [designated by a fictitious name] is ascertained the process, pleadings and all proceedings may be amended by an order directing the insertion of the true name instead of the designation employed"); *Klisurich v. DHSS,* 98 Wis. 2d 274, 277–78, 296 N.W.2d 742 (1980) (interpreting Wis. Stat. § 46.10(2) (1975–76), which provided that the Department of Health and Social Services "may bring action for the enforcement of such liability" under § 46.10 (1975–76)); *Karow v. Milwaukee Cnty. Civil Serv. Comm'n,* 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978) (interpreting Wis. Stat. § 63.10(2) (1975–76), which provided that the county civil service commission "shall appoint a time and place for the hearing of said charges [allegedly meriting an employee's demotion or dismissal], the time to be within 3 weeks after the filing of the same"); *Hitchcock v. Hitchcock,* 78 Wis. 2d 214, 219, 254 N.W.2d 230 (1977) (interpreting Wis. Stat. § 247.101 (1971–72), which provided that the circuit court "may grant a judgment of divorce or legal separation to the party whose equities on the whole are found to be superior"); *State v. Rosen,* 72 Wis. 2d 200, 202–03, 240 N.W.2d 168 (1976) (interpreting Wis. Stat. § 161.555(2)(b) (1973–74), which provided that "the action [brought to cause the forfeiture of property seized under Wis. Stat. § 161.55 (1973–74)] shall be set for hearing within 60 days of the service of the answer"); *City of Wauwatosa v. Milwaukee Cnty.,* 22 Wis. 2d 184, 187–88, 125 N.W.2d 386 (1963) (interpreting Wis. Stat. § 59.07(52)(a) (1959–60), which provided that the Milwaukee County Board "may pay to the municipality in which said [county] buildings are situated for the transmission and disposal of sewage, such proportion of the expense thereof").

the power or duty. *See Eby,* 153 Wis. 2d at 80; *Karow,* 82 Wis. 2d at 571–72; *Rosen,* 72 Wis. 2d at 207.

¶ 37. Wisconsin Stat. § 26.21(1), however, does not impose upon a property owner any power or duty to act. More specifically, § 26.21(1) does not impose upon a property owner, whose property is injured or destroyed by a forest fire, a power or duty to "recover, in a civil action, double the amount of damages suffered"; indeed, imposing such a duty would be unreasonable. Certainly, the statute does not provide for a penalty if the property owner chooses not to take such action. Rather, § 26.21(1) provides for the opportunity, if the property owner so chooses, to "recover, in a civil action, double the amount of damages suffered." Stated another way, pursuant to § 26.21(1), a property owner, whose property is injured or destroyed by a forest fire, may bring a civil action against the tortfeasor to recover double damages. *See Heritage Farms I,* 316 Wis. 2d 47, ¶ 23 (explaining that § 26.21(1) is "drafted from the perspective of who may bring an action"). When § 26.21(1) is understood in that context, it makes sense for us to interpret the word "may" according to its common and ordinary meaning of granting permission. By contrast, it would be unreasonable for us to interpret the word "may" as "shall," thereby effectively mandating that the property owner bring a civil action to recover double damages.

¶ 38. Consequently, we agree with Markel that the word "may" in Wis. Stat. § 26.21(1) is permissive. Still, it does not follow, as Markel contends, that an award of double damages under § 26.21(1) is discretionary. The language in § 26.21(1) that permits a property owner to "recover, in a civil action, double the amount of damages suffered" cannot be read in isolation. Section 26.21(1) goes on to state that the property owner "may recover, in

147

a civil action, double the amount of damages suffered, *if the fires occurred through willfulness, malice or negligence.*" (Emphasis added.)

¶ 39. The word "if" is a conjunction that ordinarily means "[i]n the event that," "[g]ranting that," or "[o]n the condition that." *The American Heritage Dictionary of the English Language* 897 (3d ed. 1992). Therefore, we interpret Wis. Stat. § 26.21(1) as providing that a property owner, whose property is injured or destroyed by a forest fire, is permitted to "recover, in a civil action, double the amount of damages suffered," in the event that or on the condition that "the fire[] occurred through willfulness, malice or negligence." Stated another way, once it is determined that the forest fire occurred through willfulness, malice, or negligence, the property owner is entitled to double damages as a matter of course.

¶ 40. Still, Markel asks us to conclude that an award of double damages under Wis. Stat. § 26.21(1) is discretionary, even if it is determined that the forest fire occurred through willfulness, malice, or negligence. To conclude otherwise, Markel argues, would lead to "blind punishment"—punishment for the sake of punishment, without regard to the particular conduct that gave rise to the forest fire. While we appreciate Markel's policy argument, it is not supported by the language of § 26.21(1). The statute permits a property owner, whose property is injured or destroyed by a forest fire, to "recover, in a civil action, double the amount of damages suffered," contingent on only one requirement: the fire must have "occurred through willfulness, malice or negligence." Markel's interpretation, however, effectively places an additional condition on the property owner's recovery of double damages, namely, a showing that the tortfeasor's conduct—whether willful, mali-

148

cious, or negligent—warrants the payment of double damages. The legislature did not impose such a condition under § 26.21(1), and this court is not permitted to create such a condition. Rather, as noted in *Heritage Farms I*, we must presume that the legislature intended to "cast a wide net when punishing those who start forest fires," subjecting the tortfeasor to double damages regardless of whether the fire was set willfully, maliciously, or negligently. 316 Wis. 2d 47, ¶ 41. A discretionary award of double damages would thwart that purpose.

¶ 41. Moreover, it is important to note that Wis. Stat. § 26.21(1) does not state that the court may award double damages, if the fires occurred through willfulness, malice or negligence. Using that type of language would have been a simple matter, had the legislature contemplated a discretionary award of double damages. Instead, as previously explained, § 26.21(1) is directed at the property owner, providing that the property owner "may recover," in a civil action, double damages, if the fires occurred through willfulness, malice or negligence. As such, "[i]t would certainly be odd" for us to interpret § 26.21(1) as giving the circuit court the discretion to decline to award double damages even after it has been determined that the fire occurred through willfulness, malice, or negligence, *see Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 19, 275 Wis. 2d 1, 683 N.W.2d 58, particularly when the statute is silent as to what standard the court ought to follow when exercising such discretion.

¶ 42. Finally, Markel's interpretation of Wis. Stat. § 26.21(1) runs counter to the language of other statutory sections in Wis. Stat. ch. 26. There can be no question that Chapter 26, entitled "Protection of Forest Lands and Forest Productivity," is aimed at safeguard-

ing forests, one of our state's most valued natural resources. Violations under Chapter 26 are subject to severe consequences, both civilly and criminally. Relevant to this case, Chapter 26 consistently imposes multiplied damages. For example, pursuant to Wis. Stat. § 26.06(3), any person who knowingly transports, receives, or conceals any forest products unlawfully severed from another's land "shall be liable to the owner for double the value thereof . . . ." Likewise, pursuant to Wis. Stat. § 26.09(3), any person who cuts, removes, or transports raw forest products without the owner's consent is liable for up to four times the stumpage value or two times the fair market value of the raw forest products, whichever is greater. It is counter-intuitive that the legislature would have intended for a person who unlawfully cuts down another's tree to be liable for as much as quadruple damages, while intending for a person who sets a forest fire and destroys another's land—be it willfully, maliciously, or negligently—to be liable for double damages only at the circuit court or fact-finder's discretion. Our canons of statutory interpretation preclude us from interpreting Wis. Stat. § 26.21(1) in a manner that produces such an absurd result. *See Kalal,* 271 Wis. 2d 633, ¶ 46.

¶ 43. In summary, we conclude that pursuant to Wis. Stat. § 26.21(1), if it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, then the property owner is entitled to double damages as a matter of course.[9] In this case, the jury determined

---

[9] Markel contends that the decision to award double damages under Wis. Stat. § 26.21(1) is reserved for the fact-finder and cannot be submitted to the court without offending

that Heritage Farms' property was damaged by a forest fire caused by Knaack's negligence. Accordingly, Heritage Farms is entitled to double damages as a matter of course.[10]

Markel's constitutional right to a jury trial. Markel's contention is premised upon an argument that we have already rejected, namely, that an award of double damages under § 26.21(1) is subject to a discretionary determination based upon the defendant's particular conduct. We conclude today that pursuant to § 26.21(1), if it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, then the property owner is entitled to double damages as a matter of course. In other words, once it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, the property owner's damages are doubled by operation of law. *See Hartlaub v. Coachmen Indus., Inc.,* 143 Wis. 2d 791, 804, 422 N.W.2d 869 (Ct. App. 1988). "Such a function is properly performed by the trial court—not the finder of fact." *Id.*

[10] Alternatively, Markel argues that Wis. Stat. § 26.21(1) is unconstitutionally vague as applied to Markel. More specifically, Markel maintains that § 26.21(1) is so ambiguous that it failed to provide notice to Markel that the statute is applicable to Markel. At the outset, we note that Markel failed to raise an as-applied constitutional challenge to § 26.21(1) in *Heritage Farms I.* In any event, we reject Markel's argument that § 26.21(1) is unconstitutionally vague as applied to Markel. A statute is unconstitutionally vague if it does not give fair notice of the conduct prohibited by the legislation. *City of Madison v. Baumann,* 162 Wis. 2d 660, 672, 470 N.W.2d 296 (1991); *see also State ex rel. Kalt v. Bd. of Fire & Police Comm'rs,* 145 Wis. 2d 504, 510, 427 N.W.2d 408 (Ct. App. 1988). At the same time, the challenged statute need not define the prohibited conduct with absolute clarity and precision. *State v. Pittman,* 174 Wis. 2d 255, 276–77, 496 N.W.2d 74 (1993). Rather, a statute is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its applica-

151

2. Whether our interpretation of Wis. Stat. § 26.21(1) should apply only prospectively

██

¶ 44. This court, like all courts, generally adheres to the doctrine that a new rule of law applies retroactively. *State ex rel. Buswell v. Tomah Area Sch. Dist.,* 2007 WI 71, ¶ 46, 301 Wis. 2d 178, 732 N.W.2d 804. The doctrine, referred to as the "Blackstonian doctrine," is traditionally implicated in cases in which the court decides to overrule or repudiate an earlier decision. *See State v. Picotte,* 2003 WI 42, ¶ 42, 261 Wis. 2d 249, 661 N.W.2d 381. "The Blackstonian doctrine is based on the jurisprudential theory that 'courts declare but do not make law. In consequence, when a decision is overruled, it does not merely become bad law,—it never was the law, and the later pronouncement is regarded as the law from the beginning.'" *Id.* (quoting *Laabs v. Tax Comm'n,* 218 Wis. 414, 416–17, 261 N.W. 404 (1935)).

██ ██

¶ 45. Still, on occasion, this court has departed from the general rule of retroactivity and chosen instead to apply a new rule of law only prospectively. The decision to apply a new rule of law only prospectively, or to "sunburst"[11] the new rule of law, is driven by our

---

tion . . . ." *Kalt,* 145 Wis. 2d at 510 (internal quotations omitted). In this case, our interpretation and application of § 26.21(1) is based upon the statute's plain meaning. By definition, therefore, the language in § 26.21(1) is not so vague as to compel Markel to guess at its meaning or question its application to Markel.

[11] "Sunbursting," named after the United States Supreme Court's decision in *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358 (1932), is a technique in which the court applies a new rule of law prospectively. *See* Thomas E. Fairchild, *Limitation of New Judge-Made Law to Prospective*

attempt to alleviate the unsettling effects of a party justifiably relying on a contrary view of the law. *Buswell,* 301 Wis. 2d 178, ¶ 46. Accordingly, in determining whether to apply a new rule of law prospectively instead of retrospectively, we consider three factors: (1) whether our holding establishes a new rule of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression, the resolution of which was not clearly foreshadowed; (2) whether retroactive application would further or impede the operation of the new rule; and (3) whether retroactive application could produce substantial inequitable results. *Id.,* ¶ 47; *see also Kurtz,* 91 Wis. 2d at 109.

¶ 46. In this case, in the event that we interpret the word "may" in Wis. Stat. § 26.21(1) as "shall," Markel requests that we "sunburst," or apply only prospectively, our holding so as to mitigate any hardship to Markel. As a preliminary matter, for the reasons set forth above, we do not interpret the word "may" in § 26.21(1) as "shall." Furthermore, we are not persuaded that our interpretation of § 26.21(1) is subject to "sunbursting" in the first instance. As explained above, the decision of whether to apply a new rule of law prospectively instead of retrospectively is traditionally implicated only in cases in which the court decides to overrule or repudiate an earlier decision. *Cf.* Thomas E. Fairchild, *Limitation of New Judge-Made Law to Prospective Effect Only: "Pro-*

*Effect Only: "Prospective Overruling" or "Sunbursting",* 51 Marq. L. Rev. 254, 255 (1968). In *Sunburst Oil,* the Court made clear that "[a] state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." 287 U.S. at 364; *see also State ex rel. Buswell v. Tomah Area Sch. Dist.,* 2007 WI 71, ¶ 46 n.12, 301 Wis. 2d 178, 732 N.W.2d 804.

*spective Overruling"* or *"Sunbursting",* 51 Marq. L. Rev. 254, 254–55 (1968). For example, in *Buswell,* we decided to apply our interpretation of Wis. Stat. § 19.84(2) (2003–04) only prospectively because our interpretation established a reasonableness standard which was a clear departure from the bright-line standard established by the court of appeals' interpretation of Wis. Stat. § 19.84(2) (1997–98) in an earlier decision. *See* 301 Wis. 2d 178, ¶¶ 21, 48 (overruling *State ex rel. H.D. Enters. II, LLC v. City of Stoughton,* 230 Wis. 2d 480, 602 N.W.2d 72 (Ct. App. 1999)). By contrast, in this case, we are not overruling any past precedent; rather, we are interpreting the plain language of § 26.21(1) as it has existed since 1905. *See* § 18, ch. 264, Laws of 1905. Accordingly, here, the policy concern that typically supports a decision to "sunburst" a new rule of law is simply not present; we are not overruling a contrary rule of law on which Markel could have justifiably relied.

¶ 47. Nevertheless, even if we were to agree with Markel that our interpretation of Wis. Stat. § 26.21(1) is subject to "sunbursting," we would still decline to apply our holding only prospectively. Applying the above three factors to the instant case, we conclude that our interpretation of § 26.21(1) is properly applied retroactively. First and foremost, as already mentioned, our interpretation of § 26.21(1) is not a clearly new rule of law. We are not overruling any past precedent. Instead, we are interpreting statutory language that has existed in its present form since 1905. *See* § 18, ch. 264, Laws of 1905. Indeed, Markel's only argument that our interpretation of § 26.21(1) was not clearly foreshadowed rests on Markel's assumption that we would construe the word "may" as "shall," an interpretation we do not adopt today. Second, retroactive application

furthers, rather than impedes, the operation of § 26.21(1) as we have interpreted it. Our interpretation is based in part on the legislature's intent to severely punish those who set forest fires, regardless of whether the conduct was willful, malicious, or negligent. Applying our holding to Markel, who was found by a jury to have negligently set a forest fire that damaged Heritage Farms' property, carries out that legislative intent. Finally, we are not persuaded that retroactive application would produce substantially inequitable results. Even under Markel's theory that an award of double damages under § 26.21(1) is discretionary, Markel still faced the prospect of being liable for double damages. Therefore, consistent with our general practice, we conclude that our holding today applies retroactively.

¶ 48. We turn now to the second principal issue before us: whether Heritage Farms is entitled to 12 percent interest on its award of double damages and its award of attorney fees and costs from the date of the jury's verdict, pursuant to Wis. Stat. § 814.04(4).

### B. Wisconsin Stat. § 814.04(4)

¶ 49. This court has long recognized the "basic principle that prejudgment interest cannot be awarded on an unliquidated amount or one which is not capable of determination by application of some fixed standard." *Nelson v. Travelers Ins. Co.,* 102 Wis. 2d 159, 167, 306 N.W.2d 71 (1981); *see also Smith v. Atco Co.,* 6 Wis. 2d 371, 395, 94 N.W.2d 697 (1959) (" 'In order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped; the amount of the claim must be known and determined, or readily determinable.' " (quoting *Maslow*

*Cooperage Corp. v. Weeks Pickle Co.*, 270 Wis. 179, 192–93, 70 N.W.2d 577 (1955))). Wisconsin Stat. § 814.04(4) applies that basic principle, employing an interest rate of 12 percent per year.[12] Section 814.04(4), "Interest on verdict," provides, in relevant part: "[I]f the judgment is for the recovery of money, interest at the rate of 12% per year from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs."[13] In other words, § 814.04(4) "designates the date of the verdict as the point at which interest is payable." *Nelson*, 102 Wis. 2d at 170. At that point, the plaintiff's nonmonetary claims are converted into dollars, "the parameters of the [defendant's] debt have been established and the case no longer involves damages which are wholly at large." *Id.* (internal quotations omitted).

¶ 50. Relying on Wis. Stat. § 814.04(4), Heritage Farms argues that it is entitled to 12 percent interest on its award of double damages and its award of attorney fees and costs from the date of the jury's verdict, October 13, 2006. Markel disagrees, maintaining that neither of those amounts was known or capable of

_____

[12] On November 16, 2011, the legislature amended Wis. Stat. § 814.04(4), replacing the annual 12 percent interest rate with an annual rate "equal to 1 percent plus the prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year, as reported by the federal reserve board in federal reserve statistical release H. 15 . . . ." *See* 2011 Wis. Act 69, § 2. The new interest rate applies to judgments entered on or after December 2, 2011. *See id.*, § 4.

[13] Wisconsin Stat. § 815.05(8) imposes the same interest rate on the amount recovered "from the date of the entry of the judgment until it is paid." Like Wis. Stat. § 814.04(4), *see supra* note 12, Wis. Stat. § 815.05(8) was amended by 2011 Wis. Act 69. *See id.*, § 3.

determination as of the date of the jury's verdict. In the alternative, Markel contends that § 814.04(4) is unconstitutional. We consider the parties' arguments in turn.

1. Whether Heritage Farms is entitled to 12 percent interest on its award of double damages from the date of the jury's verdict

¶ 51. Heritage Farms argues that it is entitled to 12 percent interest on its award of double damages from the date of the jury's verdict, October 13, 2006.[14] We agree.

¶ 52. In *Campenni v. Walrath,* 180 Wis. 2d 548, 560, 513 N.W.2d 602 (1994) (per curiam), in a nearly identical context, this court concluded that interest under Wis. Stat. § 814.04(4) shall be calculated on the total award of double damages from the date of the jury's verdict, even though the defendant's liability for double damages was not established until the case was appealed. In that case, the plaintiff filed suit against the defendant after the defendant's dog twice attacked the plaintiff and her two dogs. *Campenni v. Walrath,* 180 Wis. 2d 548, 552–53, 509 N.W.2d 725 (1994). The jury awarded the plaintiff $18 for the first incident and over $75,000 for the second. *Id.* at 553. The plaintiff then moved the circuit court for double damages under Wis. Stat. § 174.02(1)(b) (1991–92).[15] *Id.* The circuit court denied the plaintiff's motion by operation of law when it

---

[14] Markel has already paid the judgment, plus interest, on the jury's $568,422 compensatory damages award. Heritage Farms does not seek any more interest on that award. Rather, Heritage Farms seeks 12 percent interest on its $568,422 double damages award from the date of the jury's verdict to the date of payment.

[15] Wisconsin Stat. § 174.02(1)(b) (1991–92) provided, in relevant part, that "the owner of a dog is liable for 2 times the

failed to act on the motion within 90 days after the verdict was rendered, as required by Wis. Stat. § 805.16(3) (1991–92). *Id.* The court of appeals affirmed. *Id.* The plaintiff appealed to this court, and we reversed, concluding that the defendant was liable for double the full amount of damages awarded by the jury. *Id.* at 560a.

¶ 53. The defendant moved this court for reconsideration, which we denied. *Campenni,* 180 Wis. 2d 548, 513 N.W.2d 602 (per curiam). However, in response to the defendant's motion, we supplemented our decision by, *inter alia,* clarifying that the plaintiff was entitled to 12 percent interest under Wis. Stat. § 814.04(4) on the total doubled damages from the date of the jury's verdict. *Id.* at 560c. In so concluding, we drew support from this court's decision in *Nelson,* 102 Wis. 2d 159. *Campenni,* 180 Wis. 2d 548, 560c, 513 N.W.2d 602 (per curiam).

¶ 54. In *Nelson,* this court held that pursuant to Wis. Stat. § 814.04(4), when a personal injury action results in a jury verdict in favor of the plaintiff, but, upon appeal, the liability portion of the verdict is set aside and the issue of contributory negligence is retried, again resulting in a verdict in favor of the plaintiff, interest must be calculated from the date of the first verdict when the damages were determined. 102 Wis. 2d at 160–61. The court made clear that interest under § 814.04(4) runs from the date the damages are liquidated or determinable, regardless of outstanding legal issues concerning liability for those damages. *Id.* at 170–71. In *Nelson,* the damages were fixed by the first verdict, even though adjustment for the plaintiff's comparative negligence could not be made until after liability was established in the subsequent trial. *Id.* at 171.

---

full amount of damages caused by the dog injuring or causing injury to a person . . . if the owner was notified or knew that the dog previously injured or caused injury to a person . . . ."

Consequently, the court concluded that the plaintiff was entitled to statutory interest on the net damage award —the total damages established by the first verdict reduced by the plaintiff's contributory negligence established by the second—from the date of the first verdict. *Id.*

¶ 55. Turning back to the instant case, we conclude that this court's decisions in *Campenni* and *Nelson* are determinative. Pursuant to Wis. Stat. § 814.04(4), Heritage Farms is entitled to 12 percent interest on its award of double damages from the date of the jury's verdict, October 13, 2006, even though Markel's liability for double damages was not firmly established until our decision today. The damages were liquidated and determinable on October 13, 2006, when the jury awarded Heritage Farms compensatory damages of $568,422. At that point, Heritage Farms' nonmonetary claims for negligence, trespass, and nuisance were converted into dollars, and the case no longer involved "damages which are wholly at large." *See id.* at 170. The only outstanding legal issue was whether Markel was liable for double the amount of $568,422. Regardless of the outcome on appeal, Markel could have tendered the total doubled amount any time after the jury returned its verdict and thereby stopped the interest from running.

> 2. Whether Heritage Farms is entitled to 12 percent interest on its award of attorney fees and costs from the date of the jury's verdict

¶ 56. Heritage Farms argues that it is also entitled to 12 percent interest on its award of attorney fees and costs from the date of the jury's verdict. On this point, we disagree.

¶ 57. The circuit court awarded Heritage Farms its attorney fees and costs on November 19, 2009. On February 12, 2010, Markel paid the judgment of attorney fees and costs, plus interest running from November 19, 2009. Heritage Farms now seeks 12 percent interest on its award of attorney fees and costs from the date of the jury's verdict, October 13, 2006, until November 19, 2009.

¶ 58. We conclude that Heritage Farms is entitled to 12 percent interest on its award of attorney fees and costs only from the date of that award, November 19, 2009, not from the date of the jury's verdict. On the date of the jury's verdict, the amount of Heritage Farms' attorney fees and costs was not known or determinable. By that time, Heritage Farms had merely asserted a claim for reasonable costs for legal representation under Wis. Stat. § 26.21(1). That claim was not converted into dollars until November 19, 2009, when the circuit court awarded Heritage Farms its attorney fees and costs. Markel has already paid that judgment and all interest running from November 19, 2009. No more could have been expected of Markel.

 3. Whether Wis. Stat. § 814.04(4) is unconstitutional
 on its face or as applied to Markel

¶ 59. In any case, Markel contends that Wis. Stat. § 814.04(4) is unconstitutional. According to Markel, the 12 percent interest rate under § 814.04(4) is so severe and so far removed from the national prime lending rate that it tends to "chill" defendants from properly defending their claims on appeal, lest they may suffer "the catastrophic financial disaster that results in the event of loss." In light of that chilling effect, Markel argues, § 814.04(4) violates Markel's rights to due pro-

160

cess and equal protection as guaranteed by both the federal and state constitutions.

¶ 60. Markel's constitutional argument is not entirely fleshed out, and it is unclear to us whether Markel is challenging Wis. Stat. § 814.04(4) on its face or as applied to Markel. Nevertheless, in either case, we conclude that Markel has failed to prove beyond a reasonable doubt that § 814.04(4) is unconstitutional.

¶ 61. Statutes are presumed constitutional. *Smith,* 323 Wis. 2d 377, ¶ 8. Accordingly, a party challenging a statute's constitutionality bears a heavy burden. *Id.* It is insufficient to establish merely that the statute's constitutionality is doubtful or that the statute is probably unconstitutional. *Id.* "Instead, the party challenging a statute's constitutionality must 'prove that the statute is unconstitutional beyond a reasonable doubt.' " *Id.* (quoting *State v. Cole,* 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W. 2d 328).

¶ 62. In this case, Markel merely objects to the 12 percent interest rate under Wis. Stat. § 814.04(4) without undertaking a bona fide constitutional analysis. Markel does not attempt to argue that § 814.04(4) is irrational or that it unreasonably disadvantages one class over another. *See id.,* ¶ 12; *State v. McManus,* 152 Wis. 2d 113, 130–31, 447 N.W.2d 654 (1989). Rather, Markel's constitutional argument seems to hinge on Markel's contention that the interest rate under § 814.04(4) must correspond to the national prime lending rate. However, there is no requirement that the interest rate under § 814.04(4) stay in "lock-step with every fluctuation in market conditions." *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 224 Wis. 2d 312, 326, 592 N.W.2d 279 (Ct. App. 1998) (inter-

nal quotations omitted). Such a contention is more appropriately addressed to the legislature.[16] Moreover, while Markel complains that the 12 percent interest rate is so severe that it tends to deter defendants from properly defending themselves on appeal, Markel fails to explain why a defendant could not protect itself against such a financial burden by simply tendering payment ahead of appeal, before interest accrues. For these reasons, we conclude that Markel has failed to prove beyond a reasonable doubt that § 814.04(4) is unconstitutional.

## IV. CONCLUSION

¶ 63. We conclude that pursuant to Wis. Stat. § 26.21(1), if it is determined that the owner's property was injured or destroyed by a forest fire that occurred through willfulness, malice, or negligence, then the property owner is entitled to double damages as a matter of course. We apply this holding retrospectively. Consequently, in this case, because the jury determined that Heritage Farms' property was damaged by a forest fire caused by Knaack's negligence, Heritage Farms is entitled to double damages as a matter of course.

¶ 64. We further conclude that pursuant to Wis. Stat. § 814.04(4), Heritage Farms is entitled to 12 percent interest on its double damages award from the date of the jury's verdict. At the same time, we determine that Heritage Farms is entitled to 12 percent interest on its award of attorney fees and costs only from the date of that award, not from the date of the jury's verdict. Finally, we conclude that Markel has

---

[16] Indeed, the legislature has recently amended Wis. Stat. § 814.04(4) in a manner that may address Markel's concerns. *See supra* note 12.

failed to prove beyond a reasonable doubt that § 814.04(4) is unconstitutional on its face or as applied to Markel.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court with instructions to enter judgment in accordance with this opinion.

¶ 65. ANN WALSH BRADLEY, J. (*dissenting*). The question in this case is whether an award of double damages is mandatory, or whether it is within a circuit court's discretion.

¶ 66. I agree with the majority's conclusion that the statutory term "may" should not be interpreted to mean the mandatory "shall." I part ways with the majority, however, when it nevertheless concludes that the court has no discretion because the plain meaning of the statute makes the award of double damages mandatory.

¶ 67. The plain meaning of the statute mandates no such result. Rather than being supported by the plain language of the statute, the majority's interpretation instead rests upon a leap of logic.

¶ 68. After examining the language and the history of the statute, I agree with the circuit court and a unanimous court of appeals that the legislature intended circuit courts to exercise discretion in awarding double damages. Accordingly, I respectfully dissent.

I

¶ 69. Wisconsin Stat. § 26.21(1) provides as follows: "In addition to the [forfeiture] penalties provided in s. 26.20, . . . private owners, whose property is injured or destroyed by forest fires, may recover, in a civil

163

action, double the amount of damages suffered, if the fires occurred through willfulness, malice or negligence." Here, the jury determined that the fire was the result of negligence.

¶ 70. In its examination of the statute, the majority concludes that the statutory term "may" should not be interpreted to mean "shall." Majority op., ¶ 36. It determines that the function of the phrase "may recover, in a civil action" is to permit the property owner to bring a civil action to recover double damages. *Id.*, ¶ 38.

¶ 71. Nevertheless, the majority ultimately concludes that the statute mandates the award of double damages. *Id.*, ¶ 39. It asserts that its interpretation is based on the "plain meaning" of the statute. *Id.*, ¶ 43 n.10.

¶ 72. The majority's assertion about the statute's plain meaning is surprising. Both the circuit court and the court of appeals, in well-reasoned decisions analyzing the statutory text, concluded that double damages are not mandatory. Additionally, although Heritage Farms concludes, like the majority, that an award of double damages is mandatory, the statutory interpretation advanced by Heritage Farms does not resemble the interpretation settled upon by the majority. *Id,* ¶ 31.

¶ 73. The majority embraces its unique interpretation, proclaiming that it alone understands the plain meaning of the statute. If the meaning of the statute were so plain, one would expect that of the circuit court, the court of appeals, and Heritage Farms, at least one would have advanced the same interpretation as the majority.

¶ 74. In my estimation, the majority's interpretation is not based on the plain meaning of the statute at all. Rather, it is based upon a leap of logic. After

determining that a property owner is *permitted* to recover double damages, the majority inexplicably leaps to the conclusion that the property owner is *entitled* to recover double damages as a matter of law. *Id.,* ¶ 37.

¶ 75. Permitted does not mean entitled. Nothing in the plain language of the statute supports such a leap of logic.

## II

¶ 76. Contrary to the majority, I conclude that the statute is ambiguous. It may be that the legislature intended that the award of double damage be mandatory—as the majority contends. However, it is equally likely that the legislature, in permitting the recovery of double damages, intended that the decision be left to the circuit court's discretion—as both the circuit court and the court of appeals concluded.

¶ 77. The history of the statute provides some useful clues. By comparing the history of Wis. Stat. § 26.21(1) (forest fires) to the history of a neighboring and closely related statute, Wis. Stat. § 26.09 (forest trespass), I conclude that the legislature did not intend to mandate double damages for damage to property caused by forest fires.

¶ 78. The text of what is now Wis. Stat. § 26.21 was originally enacted in 1905. § 18, ch. 264, Laws of 1905. That bill ushered in two parallel provisions, one addressing civil liability for forest fires, and another addressing civil liability for forest trespass. When these two provisions were created, they contained nearly identical language providing that private owners "may recover in a civil action double the amount of damages suffered."

¶ 79. When originally enacted in 1905, the provision addressing civil liability for forest fires provided as follows:

165

> In addition to the penalties provided in [the previous section], . . . private owners, whose property is injured or destroyed by such fires, *may recover, in a civil action, double the amount of damages suffered,* if the fires occurred through wilfullness, malice or negligence . . . .

Wis. Stat. § 1494–58 (Supp. 1906) (emphasis added). With similar language, the provision addressing civil liability for forest trespass provided as follows:

> In addition to the penalties provided in [the previous section] for wilful trespass on forest lands, . . . private owners upon whose lands the wilful trespass was committed, *may recover in a civil action double the amount of damages suffered.* . . .

Wis. Stat. § 1494–60 (Supp. 1906) (emphasis added). As with the current version of Wis. Stat. § 26.21(1), neither of the 1905 enactments explicitly mandated double damages.

¶ 80. In the 107 years that followed their original enactment, these two civil liability provisions took divergent paths. The provision regarding forest fires was renumbered as Wis. Stat. § 26.21(1), but otherwise, it remained largely unchanged.

¶ 81. By contrast, during that same time period, the provision regarding forest trespass was renumbered as Wis. Stat. § 26.09, and it underwent three significant substantive revisions. As a result of the amendments to Wis. Stat. § 26.09, multiple damages for some instances of forest trespass are now clearly mandated by the legislature.

¶ 82. As stated above, the original text of the forest trespass statute referenced the double damages penalty when it stated that a property owner "may recover in a civil action double the amount of damages

166

suffered." In 1949, this text was repealed and recreated as follows:

> Civil liability for unlawful cutting. In addition to the penalties provided in sections 26.04 and 26.05, any person unlawfully cutting forest products *shall be liable* to the owner . . . to the land on which the unlawful cutting was done, *in a civil action, for double the amount of damages suffered.* . . .

Wis. Stat. § 26.09 (1949) (emphasis added).

¶ 83. Then, in 1981, the provision was again amended as follows:

> Civil liability for unlawful cutting, removal and transport. In addition to the other penalties and costs, any person unlawfully cutting, removing or transporting raw forest products *is liable* to the owner . . . to the land on which the unlawful cutting was done or from which it was removed, in a civil action, *for double the amount of damages suffered.* . . .

Wis. Stat. § 26.09 (1981–82) (emphasis added).

¶ 84. Accordingly, in addressing civil liability for forest trespass, the legislature changed the language providing that private owners "may recover" double damages to mandatory language providing that a trespasser "shall be liable" for double damages. It then changed the language again to mandate that the trespasser "is liable" for double damages. The statutory history of § 26.09 evinces the legislature's clear intent to mandate double damages for unlawful cutting and removal of forest products.

¶ 85. When the legislature changed the language of Wis. Stat. § 26.09 to mandate double damages for forest trespass, it did not make any parallel changes to the forest fire statute, Wis. Stat. § 26.21(1). The fact that the legislature chose to significantly amend Wis.

167

Stat. § 26.09 (forest trespass) and, at the same time, declined to make the analogous amendments to the neighboring Wis. Stat. § 26.21(1) (forest fires) signals that the legislature intended that these provisions be treated differently.

¶ 86. The last significant substantive revision to the forest trespass statute occurred in 1999, when the legislature again repealed and recreated § 26.09. 1999 Wis. Act 190, § 15. In relevant part, the amendments provided that "an owner of raw forest products that were harvested without the consent of the owner may bring a civil action against the person who harvested the raw forest products to recover the damages caused by the harvesting." Wis. Stat. § 26.09(2)(a). As amended, § 26.09(3)(a) provides that "[a] person against whom an action is brought . . . *is liable* for the applicable damages under par. (b) . . . ." (Emphasis added.) Paragraph (b) provides for single, double, or quadruple damages, depending upon the culpability of the tortfeasor.[1]

---

[1] (2)(a) In addition to any other enforcement action that may be taken . . . an owner of raw forest products that were harvested without the consent of the owner may bring a civil action against the person who harvested the raw forest products to recover the damages cause by the harvesting. . . .

. . .

(3)(a) A person against whom an action is brought as provided in sub. (2) is liable for the applicable damages under par. (b) or (c), . . .

(b)1. A court shall award damages that equal the stumpage value of the raw forest products harvested if the person harvesting the raw forest products or the person giving consent for the harvesting reasonably relied upon a recorded survey . . .

2. A court shall award damages that are equal to 2 times the stumpage value of the raw forest products harvested if a recorded survey was not relied upon as specified in subd. 1. but the person harvesting the raw forest products took reasonable precautions in identifying harvesting boundaries.

¶ 87. The 1999 revision to the forest trespass statute underscores the legislative intent that multiple damages for forest trespass are, in some instances, mandatory. Again, no analogous changes were made to the forest fire statute.

¶ 88. The majority suggests that the legislature's manifest imposition of multiple damages for some instances of forest trespass must signal an intent to likewise mandate double damages for forest fires. Majority op., ¶ 42. I reach the opposite conclusion.

¶ 89. The fact that the legislature clearly imposed multiple damages for some instances of forest trespass indicates that the legislature knows how to use language imposing multiple damages when it wants to do so. Under these circumstances, the legislature's failure to amend the forest fire statute, Wis. Stat. § 26.21(1), by adding clear language mandating double damages signals its intent. The legislature did not intend that the award of double damages be mandatory. Rather, the decision of whether the facts of a particular case warrant the award of double damages under Wis. Stat. § 26.21(1) is left to the sound discretion of the circuit court.

¶ 90. Accordingly, I respectfully dissent.

---

3. A court shall award damages that are equal to 4 times the stumpage value or 2 times the fair market value of the raw forest products harvested, whichever is greater, if a recorded survey was not relied upon as provided in subd. 1. and the person harvesting the raw forest products did not take reasonable precautions in identifying the harvesting boundaries.